Albert FRIED, for the USE of the BERG-
ER SUPPLY COMPANY; for the use of
the Commercial Investment Trust In-
corporated, now for the use of the Fed-
eral Housing Administrator, acting on
behalf of the United States of America,
Plaintiff,

v.

John FEOLA and Teresa Feola,
Defendants.

Civ. A. No. 674.

United States District Court,
W. D. Pennsylvania.

Dec. 28, 1954.

John W. McIlvaine, U. S. Atty., Dale
E. Sloan, Asst. U. S. Atty., Pittsburgh,
Pa., for plaintiff.

Clyde P. Bailey, Pittsburgh, Pa.,
James B. Ceris, Pittsburgh, Pa., for de-
fendant.

MARSH, District Judge.

This matter came on for trial and was
met in limine by an oral motion for dis-
missal by the defendant, Teresa Feola,
for the reason that she has been preju-
diced in her defense by the plaintiff's lack

of diligence in prosecuting this action,[1] and for the further reason that plaintiff had agreed on December 5, 1950 to the dismissal of the case if the witness Albert Fried was not found by January 2, 1951.

Testimony was taken of the witnesses present primarily to determine how many times the case had theretofore been called for trial. Although the defendant claims to have been seriously prejudiced by the death of her husband, a co-defendant, on June 23, 1953, whereby she was deprived of his testimony, it was not plainly apparent that the alleged prejudice was the result of plaintiff's lack of diligence in prosecuting the action. Whereupon, the court requested the defendant to make her motion in writing and submit affidavits. This was done and the United States Attorney has filed an answer to the motion. The court ordered the parties to proceed to trial because the witnesses for both sides were present.

The court is of the opinion that the motion to dismiss should be denied, and that judgment should be entered for the plaintiff.

## Motion to Dismiss

The complaint was filed on November 21, 1939 against John Feola and Teresa Feola. An answer was filed on September 6, 1940. No praecipe was filed by either side to list the case for trial,[2] and on July 23, 1948 the Clerk notified both sides that the case should be dismissed under Rule 17[3] unless objections were filed. On August 4, 1948, objections were filed by a former Assistant United States Attorney, representing the plaintiff, in the form of a letter addressed to the Clerk advising that "We are attempting to secure an offer in compromise in settlement of this claim and would therefore appreciate your holding this matter in abeyance until further notice from this office".

In December, 1950, the Chief Judge, without praecipe from either party, assigned the case to Judge McVicar for trial. At a hearing held before Judge McVicar on the 5th of December, 1950, the plaintiff, representing that it could not proceed without the presence of one Albert Fried, "a necessary witness", procured a continuance over the strenuous objections of the defendants. However, counsel for the defendants drew an order, which was signed by Judge McVicar and agreed to by counsel for the plaintiff, which stated that "if Plaintiff is unable to proceed for trial on or before Jan. 2, 1951, a Motion to Dismiss with prejudice may be made". However, it was not until February 16, 1951 that defendants again moved to dismiss the case with prejudice. Apparently, by that time Albert Fried had been found and the order of dismissal was never made because counsel for plaintiff would not consent to it. On June 4, 1951, the Clerk notified the defendants that the case would not be dismissed.

Evidently, the defendants had not pressed this motion for dismissal because their counsel states that he was surprised to have received this notice from the

---

1. See: Shotkin v. Westinghouse Electric & Mfg. Co., 10 Cir., 1948, 169 F.2d 825; Refior v. Lansing Drop Forge Co., 6 Cir., 1942, 124 F.2d 440, 444.

2. Rule 18, section 1, of the Rules of the District Court of the United States for the Western District of Pennsylvania, in effect during the period from 1939 until March 16, 1951, provides: "Either party may place on the list for trial any case in which issue is joined by filing a praecipe therefor in the Clerk's Office thirty days before the first day of the term, and a case once put upon a trial list and continued shall not be set for trial on the

next list without the filing of another praecipe."

3. Rule 17, of the Rules of the District Court of the United States for the Western District of Pennsylvania, in effect during the period from 1939 until March 16, 1951, provides: "In any case in which no proceeding toward bringing it to issue, trial or termination has been taken for a period of three consecutive years, the Clerk shall, without special order, enter a non pros. and tax the costs against the plaintiff. Such non pros. shall be without prejudice."

Clerk; that he had taken it for granted that the order of dismissal had been made in February.

Judge McVicar called the case for trial on November 13, 1951. Subpoenas were issued and served, inter alia, upon Albert Fried and a handwriting expert to testify on behalf of the plaintiff. However, according to the affidavit of counsel for the defendant, the plaintiff moved for and secured another continuance on the ground that "Albert Fried was not available for trial and the United States Attorney reported he was uncooperative and would not testify". This averment was not denied.

Later, the case was assigned to me for trial and was called on September 13, 1954. At this time plaintiff was prepared to go to trial without Albert Fried, who was not subpoenaed or called as a witness. In the interim, different counsel had been substituted for the plaintiff.

The affidavit of defendant's counsel states that to the best of his recollection, prior to December 8, 1950, he appeared for trial on at least four occasions, and that upon each of these occasions the assistant United States Attorney in charge requested a continuance upon the ground that Albert Fried, payee in the note in question, was not present and that plaintiff had not been able to ascertain his whereabouts or serve him with a subpoena. The record does not sustain counsel's recollection. It does not appear that the case had ever been put at issue by a praecipe, nor does it appear that it had ever been assigned to a judge for trial prior to December, 1950, nor does it appear that any subpoenas were issued for trial of this case prior to November 13, 1951. The United States Attorney states in his answer "it no doubt was placed on the trial list many times, but was not reached due to the crowded condition of the trial list that exists". No trial lists have been submitted to support this statement, but if true, no record of a continuance was ever made before December 5, 1950.

With some merit, defendant argues that had the case been tried in December, 1950, without the help of Albert Fried, as it ultimately was tried, John Feola, her husband, co-maker and co-defendant, would have been able to appear and testify; that it was because of the unwarranted delay on the part of the plaintiff that defendant was deprived of the benefit of this material witness.

The difficulty with the defendant's position is that on three occasions before Judge McVicar of this court, during the period from December, 1950 to December 13, 1951, she and her husband attempted to procure a dismissal of this action for lack of diligence in prosecution. Each time the learned judge in the exercise of his discretion either continued the case or refused to sign an order dismissing it. So far as appears from the record and docket entries, between 1939 and November 13, 1951, the defendants were quite content to let the case remain as it was until they were faced with trial in 1950 and 1951 when their efforts to have the case dismissed failed.

■■ In these circumstances defendant is calling on me to hold that the discretion of another judge of this court was not properly exercised in refusing to dismiss the case and in failing to enforce the alleged agreement to dismiss. I do not think I should do this. These rulings became the law of the case. Also, as a matter of comity, a judge of coordinate jurisdiction, except in the most compelling circumstances, should not overrule decisions of their associates based on the same set of facts. United States v. Firman, D.C.W.D.Pa., 1951, 98 F.Supp. 944, 946.

■ Since November, 1951, it does not appear that the plaintiff has failed to prosecute this case diligently. When the case was next placed on my trial list and was called on September 13, 1954 for trial, plaintiff was ready and the case was tried. The unfortunate death of Mr. Feola in the meantime can be viewed only as one of the hazards to which every litigant is subject in the delay incident to a law suit.

We observe, however, that the defendant has not set forth by affidavit the precise nature of the testimony she expected her husband to give and of which she has now been deprived by the delay; if it were merely corroborative or an amplification of her own testimony, it would not have helped her cause.

On the merits of the case, we enter the following

### Findings of Fact

1. On November 23, 1938, John Feola and Teresa Feola executed the promissory note, which is plaintiff's Exhibit No. 1, in which they promised to pay to Albert Fried or order the sum of $526.58 in thirty-six successive monthly installments, commencing on January 12, 1939.

2. On or prior to November 6, 1938, the defendants entered into a Property Improvement Contract for the purchase and installation of one 24″ Ideal Cast-iron Air-Conditioning Unit sold to them by Albert Fried under and subject to the provisions of Title I, National Housing Act, 12 U.S.C.A. § 1701 et seq. On November 1, 1938, they had executed a credit application for a loan under the provisions of said Act.

3. The promissory note was given to satisfy the aforesaid Property Improvement Contract obligation owing from John and Teresa Feola to Albert Fried.

4. The air conditioning unit purportedly called for in said contract was installed by Albert Fried on or about November 22, 1938, but was removed shortly afterwards because it proved to be defective and unsatisfactory to the Feolas.

5. No payment has ever been made on the note by the makers or either of them.

6. Albert Fried, the payee of the note, endorsed the note in blank; Berger Supply Co. negotiated said note by endorsement to C.I.T. Corporation; C.I.T. Corporation endorsed the note in blank; Commercial Investment Trust Incorporated endorsed the note in blank.

7. The Federal Housing Administrator is presently the holder of said promissory note.

8. At the time that John Feola and Teresa Feola executed and delivered the promissory note to Albert Fried, neither of them could read English.

9. John Feola died on June 23, 1953.

10. In the complaint plaintiff demands judgment against defendants for the sum of $480.29, with interest at 6% from November 12, 1939, and costs; the sum of $480.29 includes $466.26 principal and $14.03 interest.

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter pursuant to § 1345 of Title 28, U.S.C.A.

2. The promissory note in suit, which was executed and delivered by John Feola and Teresa Feola to Albert Fried on November 23, 1938, at the time of its execution and delivery to the payee and also when transferred to the Federal Housing Administrator was a negotiable instrument.

3. The Federal Housing Administrator, acting on behalf of the United States of America, is the holder in due course of said negotiable promissory note, executed and delivered by John Feola and Teresa Feola.

4. The promissory note in suit has been in default since January 12, 1939, and the payment of the remaining installments was accelerated under the provisions of the note.

5. The Federal Housing Administrator is entitled to judgment in the sum of $466.26 with interest from January 12, 1939.

### Discussion

On the merits of the case, the evidence is persuasive that John and Teresa Feola on November 23, 1938 executed and delivered to Albert Fried a negotiable promissory note in the sum of $526.58 payable in installments. The note by endorsement eventually came into the possession of the plaintiff, the Federal Housing Administrator, who thus became a prima facie holder in due course. Since no payment was ever made on the note by the makers, the face amount be-

came due on January 12, 1939, the date of default, according to the automatic acceleration clause contained therein. We do not understand these facts and conclusions to be seriously disputed except the execution of the note.

■■ The only substantial question on the merits, then, is whether a defense arises from the facts that at the time of the alleged execution of the note neither of the makers could read English and neither intended to sign a promissory note.

The note apparently had been attached to the Completion Certificate, or some other paper, not in evidence, by perforated line. It is the usual form of a note. The amount promised was plainly written in figures and in writing; outstanding at the top center in capital letters were the words "Promissory Note"; at the lower left corner were the words in capital letters "Negotiable and payable at the office of Equipment Acceptance Corporation, New York, Chicago, or San Francisco with exchange."

These facts raise the question whether the defendants are brought within the Doctrine of Thoroughgood's Case, 2 Co. Rep. f. 9 (1575), which is the law of Pennsylvania. Rambo Building & Loan Association v. Dragone, 1933, 311 Pa. 422, 166 A. 888; County of Schuylkill v. Copley, 1871, 67 Pa. 386. The principle enunciated therein is that where a party to a writing of any kind is unable to read and understand the terms of the writing so that he is aware of its actual contents, he is under a duty to have one who does understand it read and explain it to him; if he does not he is bound by his signature; but if he does, and any person, whether a stranger to the transaction or not, misrepresents the contents to him so that he is unaware of the nature of the writing which he is signing, his signature thereto is not binding upon him and the instrument is void for *non est factum.*

Although the facts here indicate that at the time the defendants signed the note in litigation, they were unable to read the English language, there was not a modicum of evidence to indicate that Fried himself actually knew of this inability nor is there any evidence that he, or any other person, misrepresented the contents of the instrument and the nature thereof to these unlettered people. It therefore follows that the defendants are not within the protection of the Doctrine of Thoroughgood's Case. And if this be the law between the Feolas and Fried, it is, *a fortiori,* the law between the Feolas and one with the rights of a holder in due course.

■ The plaintiff sustained its burden of proof, by means of a handwriting expert, that the defendant and her husband signed the note in question. The defense failed to sustain its burden of proof that the note was obtained by some type of forgery. It is clear that the makers, on or about November 1, 1938, had purchased from Albert Fried a certain type furnace for $526.58 and had executed a contract of purchase as well as a credit statement with him. But the fact that the unit purchased was not the type ordered, nor satisfactory, nor as represented by Fried, cannot bar the recovery of a holder in due course on a note executed as payment therefor. If the defendants signed a writing without first requiring its contents to be disclosed to them, they are bound by their signatures thereto. For a party who signs a writing without knowledge of its contents is guilty of such a degree of negligence which can be relieved only by a showing of fraud or something akin thereto.

Allowance of $480.29 as principal would, in fact, include $14.03 default interest; the judgment for the principal can only be to the extent of the actual principal or $466.26, since to do otherwise would be an allowance of some compound interest.

Therefore, plaintiff is entitled to recover $466.26, with interest from January 12, 1939. An appropriate order will be entered.