

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2005

# Tran v. Metro Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 04-2539

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Tran v. Metro Life Ins Co" (2005). *2005 Decisions.* Paper 1081.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1081

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2539

HUU NAM TRAN,

Appellant

v.

METROPOLITAN LIFE INSURANCE
COMPANY; KWOK LAM

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 01-cv-00262)
District Judge: Honorable Donetta W. Ambrose

Argued February 18, 2005

Before: SLOVITER, AMBRO
and ALDISERT, Circuit Judges

(Filed: May 25, 2005 )

Kenneth R. Behrend, Esquire (Argued)
Behrend & Ernsberger PC
306 Fourth Avenue, Suite 300
Union National Bank Building,
Pittsburgh, PA  15222

   Counsel for Appellant

B. John Pendleton, Jr., Esquire (Argued)
Sharon T. Boland, Esquire
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NJ   07102-0652

   Counsel for Appellees

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Huu Nam Tran appeals from the District Court's grant of summary judgment in favor of Metropolitan Life Insurance Company ("MetLife"), in connection with a complaint filed by Tran alleging that he was misled by MetLife's agent as to the number of years he was obligated to pay premiums on a life

2

insurance policy he purchased. We affirm in part and reverse in part.

## I. Factual Background and Procedural History

Tran was born in Vietnam and came to the United States in 1979. He alleged in his complaint that he does not speak or read English well, and he testified through an interpreter at his deposition in this case. In 1993, Tran met Kwok Lam, a MetLife agent, when Lam came into the Chinese restaurant where Tran worked.[1] Lam spoke with Tran about purchasing a life insurance policy. The communications between Lam and Tran took place in Chinese.[2]

Lam eventually sold Tran what is commonly known as a "vanishing premiums" policy. Tran testified that Lam told him that he would only have to pay premiums on the policy for ten years. Lam, on the other hand, stated that, when explaining the

---

[1]According to Tran's brief and evidence submitted in his appendix, MetLife at that time encouraged its agents to target people in Asian-American communities.

[2]At his deposition, Tran stated that he communicated at work in Chinese but that he was not fluent in that language. (His conversations with Lam were in the Cantonese dialect.) He also testified that he studied English while in high school in Vietnam and for a period of time after coming to the United States but that he did not remember the English he had learned in school.

policy to Tran, he told him that, based on the dividend scale at that time, Tran could use his dividends to pay the premiums on the policy. Lam showed Tran a document entitled "Accelerated Payment Plan Illustration Annual Dividends Used to Buy Paid Up Additional Insurance," which Lam used to explain the terms of the policy he was attempting to sell to Tran. The first column of this illustration was labeled "End of Policy Year," and the second column was labeled "Annual Cash Outlay for Year." The illustration shows that the annual cash outlay past year thirteen is "NONE." In addition, on the illustration that Lam showed Tran, a handwritten line was inserted after year thirteen with a nearby notation (also handwritten) that read "paid up."

Lam testified that he drew the line on the illustration to demonstrate that Tran could use his dividends to pay the premiums on his policy "after 14 [fourteen] years[3] if the current dividend scale had not been changed" from what it was at the time Tran purchased the policy. After the table illustrating the dividend payment plan, the document states:

> The cash outlay illustrated shows the result if the current dividend scale continues without change. Dividends are not guaranteed and may increase or

_____

[3]Looking at Lam's deposition testimony in context, we surmise what he meant was that Tran could begin using his dividends to pay premiums in the fourteenth year of the policy's life.

4

decrease in the future. If the future dividends decrease, it is possible that the cash value of additional insurance may not be sufficient in some future years to pay the full current premium and some cash outlay may be required.

Tran signed an application for a MetLife life insurance policy on September 7, 1993. MetLife issued a whole life policy to him on September 16, 1993. Lam testified at his deposition that he personally delivered the policy to Tran and went over its terms with Tran in Chinese. Lam stated that "[he] just told [Tran] that if he dies, how much money would be payable to his beneficiary, and that he has to pay the premium lifetime, but after a certain number of years, if the current dividend scale is okay, he could start using the dividend to pay for the premium. That's about it." Tran agreed only that he received the policy.

The front page of Tran's policy included a provision titled "10-Day Right to Examine Policy" that stated:

Please read this policy. You may return the policy to Metropolitan or to the sales representative through whom you bought it within 10 days from the date you receive it. If you return it within the 10-day period, the policy will be void from the beginning. We will refund any premium paid.

5

The front page of the policy also stated that "[p]remiums [were] payable for a stated period." The premium schedule, on the third page of the policy, showed that premiums were payable for fifty-nine years. On the fifth page of the policy, a section titled "Payments During Insured's Lifetime" specified how insureds could use the annual dividends they received from MetLife. One way was to apply the dividends toward premium payments.

Finally, the policy included an integration clause as well as a clause limiting the sales representative's authority. The integration clause stated that the policy "include[d] all riders and, with the application attached when the policy [was] issued, ma[de] up the entire contract. All statements in the application [were] representations and not warranties. No statement will be used to contest the policy unless it appear[ed] in the application." The policy's limitation on the sales representative's authority provided that "[n]o sales representative or other person except our President, Secretary, or a Vice-President may (a) make or change any contract of insurance; or (b) change or waive any of the terms of this policy. Any change must be in writing and signed by our President, Secretary, or a Vice-President."[4]

According to Tran, he only realized that the terms of his policy were not what he believed them to be in 1999, when he

---

[4]The policy application contained essentially the same language as well.

received notice of a class action against MetLife. Tran later opted out of the class action and filed a complaint against MetLife and Lam on January 8, 2001, asserting causes of action for negligence, common law fraud and deceit, violations of Pennsylvania's Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, *et seq.*, breach of the implied covenant of good faith and fair dealing, bad faith, breach of fiduciary duty, and negligent supervision. At its base is the claim that Lam misrepresented the terms of the policy to Tran by telling him that his premium payments on the policy would cease after a period of time and that Tran, particularly in light of his difficulty with English, justifiably relied on Lam's representations.

The District Court dismissed Tran's claims for breach of the implied covenant of good faith and fair dealing, bad faith, and breach of fiduciary duty, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). MetLife and Lam subsequently filed a motion for summary judgment with respect to Tran's remaining claims. The District Court granted this motion in May 2004. In doing so, it rejected MetLife's argument that Tran's claims were barred by the applicable statutes of limitation. However, the Court ruled that MetLife was entitled to summary judgment because Tran could not, as a matter of law, establish reasonable reliance[5] on Lam's oral

---

[5]The District Court used the terms "reasonable reliance" and "justifiable reliance" interchangeably.

representations, as was required to succeed on his fraud, negligent misrepresentation[6], and UTPCPL claims. The District Court, citing the provisions stating that premiums were payable for fifty-nine years, that the cash value of the policy when Tran reached retirement age was specific, and that sales agents could not alter the terms of the policy through oral promises, concluded that the nature of Tran's policy was presented on the specification page of that policy in "clear, plain language." The Court acknowledged that "Pennsylvania law permits the 'reasonable expectations' of the insured to prevail over the express language of an insurance policy where the insurance company creates a reasonable expectation of coverage[,]" but determined that Tran could not "challenge the unambiguous provisions of a policy which he made no attempt to read" or to have read to him.

Tran filed a timely notice of appeal, and the propriety of the District Court's grant of summary judgment to MetLife on Tran's fraud, negligent misrepresentation, and UTPCPL claims is now before us.[7]

---

[6]The District Court characterized Tran's negligence cause of action as stating a negligent misrepresentation claim, and Tran does not dispute that characterization.

[7]The District Court also granted summary judgment in favor of MetLife on Tran's negligent supervision claim because he had presented no evidence that Lam acted outside the scope of

## II. Jurisdiction and Standard of Review

The District Court had diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. Our review of orders granting summary judgment is plenary, and we apply the same test as the District Court. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). "Under Federal Rule of Civil Procedure 56(c), that test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation omitted). Summary judgment should not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation omitted). "Finally, we review the facts in the light most favorable to the party against whom summary judgment was entered." *Id.* (internal quotation omitted).

## III. Discussion

Tran argues that the District Court erred in granting MetLife summary judgment because a reasonable jury could find that he justifiably relied on Lam's representations about the

---

his employment as is required for such a claim. Tran does not appeal that portion of the District Court's ruling, nor does he appeal the Court's dismissal of his other claims under Rule 12(b)(6).

nature of the policy. Complementing this argument is Tran's contention that, as a matter of law, he had no duty either to read the policy or have it read to him. Tran also contends that the District Court erred in determining that he was required to prove justifiable reliance, rather than mere ordinary reliance, with regard to his UTPCPL claims. We address each of these arguments in turn.

### A. *Tran's Reliance on Lam's Representations*

Justifiable reliance on an alleged misrepresentation is an element of both fraudulent representation and negligent misrepresentation causes of action in Pennsylvania.[8] Courts

---

[8]The parties do not dispute that Pennsylvania law applies to this diversity action. To succeed on a fraudulent misrepresentation claim under Pennsylvania law, a plaintiff must prove the following elements by clear and convincing evidence: "(1) a misrepresentation; (2) a fraudulent utterance; (3) an intention by the maker that the recipient will be induced to act; (4) *justifiable reliance on the misrepresentation*; and (5) damage to the recipient as a proximate result." *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 731 (3d Cir. 1991) (emphasis added) (collecting Pennsylvania cases). "Negligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of the falsity; (3) with an intent to induce another to act on it; and [](4) *which results in injury to a party acting in justifiable reliance on the*

must consider "the relationship of the parties involved and the nature of the transaction" when determining whether one party's reliance on the allegedly fraudulent representations of another is justifiable. *Rempel v. Nationwide Life Ins. Co., Inc.*, 370 A.2d 366, 368 (Pa. 1977). "The right to rely upon a representation is generally held to be a question of fact." *Silverman v. Bell Sav. & Loan Ass'n*, 533 A.2d 110, 115 (Pa. Super. Ct. 1987). Nevertheless, as discussed above, the District Court held as a matter of law that Tran's reliance on Lam's representations that premium obligations under his policy would cease after a period of time was not reasonable, leaving Tran unable to overcome what the District Court determined were the clear, unambiguous terms of the policy.

The general rule in Pennsylvania, as elsewhere, is that courts are required to give effect to the language of contracts, including insurance policies, if that language is clear and unambiguous. *See Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994) (surveying Pennsylvania law); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). However, as the District Court recognized, "in certain situations the insured's reasonable expectations will be allowed to defeat the express language of an insurance policy." *Bensalem Township*, 38 F.3d at 1309; *see also Rempel*, 370 A.2d at 368 ("Consumers

---

*misrepresentation*." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (emphasis added).

11

. . . view an insurance agent . . . as one possessing expertise in a complicated subject. It is therefore not unreasonable for consumers to rely on the representations of the expert rather than on the contents of the insurance policy itself."); *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 13 (Pa. Super. Ct. 2004) ("[N]ormal contract principles are no longer applicable in insurance transactions because insurance contracts are not freely negotiated and an insured must place a certain amount of trust in its agent." (internal quotation omitted)).

In *Bensalem Township*, we canvassed the Pennsylvania Supreme Court's decisions on the doctrine of reasonable expectations and concluded that "we [were] unable to draw any categorical distinction between the types of cases in which the Pennsylvania courts will allow the reasonable expectations of the insured to defeat the unambiguous language of an insurance policy and those in which the courts will follow the general rule of adhering to the precise terms of the policy." 38 F.3d at 1311. We concluded, however, that

> [o]ne theme that emerges from all the cases . . . is that courts are to be chary about allowing insurance companies to abuse their position vis-a-vis their customers. Thus we are confident that where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy[,] that expectation will prevail over the language of the

12

policy.

*Id*.; *see also W. Am. Ins. Co. v. Park*, 933 F.2d 1236, 1239 (3d Cir. 1991) ("[T]he Supreme Court of Pennsylvania has consistently applied equitable estoppel to prevent an insurer from attempting to frustrate the reasonable expectations of the insured.").

Here, the District Court agreed with Tran that his reasonable expectations regarding the terms of his policy must be viewed in light of his limited understanding of English. The Court proceeded to hold, however, that Tran had a duty under Pennsylvania law to read the policy or to have it read to him (obviously in a language he understands) and that, because he failed to fulfill that duty, he could not claim justifiable reliance on Lam's representations and his expectations thus could not defeat the clear policy language. This conclusion was incorrect because Pennsylvania does not impose a duty to read insurance policies when insureds allege fraud.

The Pennsylvania Supreme Court has stated that "[t]he idea that people do not read or are under no duty to read a written insurance policy is not novel." *Rempel*, 370 A.2d at 369 (citing *Dowling v. Merchs. Ins. Co.*, 31 A. 1087 (Pa. 1895)). The *Rempel* Court elaborated on this principle and held that "the policyholder had no duty to read the policy unless under the circumstances it is unreasonable not to read it." *Id.* (holding that the question of whether policyholders' reliance on agent's

allegedly fraudulent representations was justifiable should be presented to the jury); *see also Toy*, 863 A.2d at 12 (discussing *Rempel* and stating "[w]e cannot agree with the trial court that Appellant's failure to conduct a cursory examination of the information contained upon the cover page of the life insurance policy prevents her from demonstrating her justifiable reliance on [the agent's] oral representations.").

*Standard Venetian Blind*, cited by the District Court and relied on heavily by MetLife, is not to the contrary. The Pennsylvania Supreme Court stated in that case that "*[i]n the absence of proof of fraud*, failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." 469 A.2d at 566 (emphasis added) (internal quotation omitted). Importantly, *Standard Venetian Blind* involved claims for breaches of express and implied warranties in an insurance policy, whereas *Rempel* involved a fraudulent representation claim. *Compare Standard Venetian Blind*, 469 A.2d at 565, *with Rempel*, 370 A.2d at 367. Thus, although *Standard Venetian Blind* does support the proposition that there is a duty to read a policy when no fraud is present, its language indicates, and the *Rempel* decision dictates, that it does not apply to a situation where, as here, there have been allegations of fraudulent misrepresentations. *Cf. Pekular v. Eich*, 513 A.2d 427, 431 (Pa. Super. Ct. 1986) (stating that the court "was not inclined to rule, as a matter of law" that policyholders who did not read the policy were "bound by the terms of the contract"

14

under *Standard Venetian Blind* because, unlike that case, the plaintiffs had "alleged, and intend[ed] to prove, that the limitation in coverage provided by the contract was obtained as a result of intentionally false and fraudulent representations").

In *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920 (Pa. 1987), the Pennsylvania Supreme Court discussed at length the potential tension between the holdings of *Standard Venetian Blind* and *Rempel*. The Court emphasized that it had "made it clear that [its] holding [in *Standard Venetian Blind*] was not to be mechanically applied without regard to the factual context in which the claim arose. . . . Neither did we intend by our decision in [*Standard*] *Venetian Blind* to overrule or create a conflict with our decision in *Rempel*. . . ." *Id*. at 925. *Tonkovic* identified

> a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for.

*Id*. *Rempel* applies to the first type of case, and *Standard Venetian Blind* applies to the second. *Id*; *accord Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1140–41 (Pa.

15

Super. Ct. 2003) (discussing *Tonkovic*, concluding that *Standard Venetian Blind* did not apply to a policyholder who did not receive the coverage she requested, and holding that the policyholder did not have an obligation to read her policy).

Although our case does not involve coverage issues, we nonetheless believe that the *Tonkovic* distinction is useful, as Tran did not receive the premium structure he anticipated just as the policyholders in *Tonkovic* and *Pressley* did not receive the coverage they anticipated. This brings our case within *Rempel* and its progeny rather than *Standard Venetian Blind*, and the rule that an insured has no duty to read a policy unless it would be unreasonable not to do so applies here.[9] Summary judgment

---

[9]In concluding otherwise, the District Court, while referring to *Standard Venetian Blind*, did not discuss *Rempel*. Instead, the Court relied mainly on *Fried v. Feola*, 129 F. Supp. 699 (W.D. Pa. 1954). That case holds that "where a party to a writing of any kind is unable to read and understand the terms of the writing so that he is aware of its actual contents, he is under a duty to have one who does understand it read and explain it to him; if he does not he is bound by his signature." *Id.* at 703. Despite this broad language, however, the District Court's reliance on *Fried* was misplaced because *Fried*: (1) involved a promissory note, not an insurance policy, and thus did not implicate the same equitable estoppel concerns that the Pennsylvania courts have considered in the insurance context; (2) did not involve any fraud allegations; and (3) predates the Pennsylvania Supreme Court's decision in *Rempel*.

was therefore inappropriate because the District Court's determination that Tran could not justifiably rely on Lam's representations as a matter of law rested almost entirely on its erroneous conclusion that Tran had a duty to read his policy or have it read to him.

We also disagree with the District Court's determination that the terms of Tran's policy were clear and unambiguous. "Interpretation of the language of an insurance policy is generally the role of the court, rather than the jury." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. Ct. 2000) (citing *Standard Venetian Blind*, 469 A.2d at 566). Here the District Court found that the policy was clear because it stated, *inter alia*, that premiums were payable for fifty-nine years and that it contained "no[] promise that premiums [would] 'vanish' when [Tran] alleges."

However, as the Court of Appeals for the Eighth Circuit recently noted, a policy provision stating that premiums are payable for a certain number of years "could be read by a reasonable unsophisticated insured as being completely consistent with the agents' alleged representations that the premiums paid by plaintiffs for a limited time, in combination with policy interest and dividends paid, would be sufficient to cover future premiums." *Knouse v. Gen. Am. Life Ins. Co.*, 391 F.3d 907, 913 (8th Cir. 2004). It went on to hold that (1) when insurance sales agents stated that premiums would vanish after a period of time but at the same time used illustrations

17

cautioning that dividend calculations were not guaranteed (as occurred here), "reasonable minds could differ as to whether those statements were necessarily inconsistent with the agents' alleged representations that plaintiffs' premium payments would vanish and would not increase at any time," and (2) "[a]t the very least, this issue should go before a jury." *Id.* (applying Pennsylvania law).[10]

---

[10]Tran asserts that the Eighth Circuit's decision in *Knouse* should prevent MetLife from relitigating the issue of Tran's justifiable reliance in this case under the issue preclusion doctrine. "Under Pennsylvania law, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea was asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." *Greenleaf v. Garlock*, 174 F.3d 352, 357–58 (3d Cir. 1999) (internal quotation omitted). MetLife apparently owns General American Life Insurance, which was the defendant-appellee in the Eighth Circuit case. Thus Tran contends the privity requirement is satisfied. Even if so, Tran's issue preclusion argument nonetheless fails because prong one is not met. *Knouse* involved a factual situation similar to ours and many of the same legal arguments were raised in that case as have been made here. However, the actual issue decided by the Eighth Circuit was whether the statute of limitations barred the policyholders' claims of fraud, negligence, and violations of

18

Similarly, even if Tran had read his policy or had it read to him, an examination of the policy terms would not necessarily have revealed that Lam's alleged statements were false as to when premium payments would cease. The policy states that dividends may be used to pay premiums. Thus the policy term providing that premiums would be payable for fifty-nine years does not unambiguously mean that Tran would be required to pay those premiums out-of-pocket for that entire period of time.

"Where a provision of an insurance policy is ambiguous, it will be construed in favor of the insured." *Williams*, 750 A.2d at 885 (internal quotation omitted). Given the posture of this case, we must also look at the facts in the light most favorable to Tran. Doing so, we are compelled to conclude—in light of the ambiguous policy language, Lam's alleged statements about premiums being payable for only ten years, the policy

the UTPCPL based on sales agents' representations regarding vanishing premiums. *Knouse*, 391 F.3d at 910. The Eighth Circuit's statements on the justifiable reliance issue were made in the context of discussing the application of the discovery rule—an equitable rule that tolls the statute of limitations when plaintiffs cannot, through the exercise of reasonable diligence, discover that they had been injured before the limitations period ran, *see, e.g., Vitalo v. Cabot Corp.*, 399 F.3d 536, 542–43 (3d Cir. 2005)—to vanishing premiums cases. *Knouse*, 391 F.3d at 913. Thus, the issue litigated in the Eighth Circuit is not identical to the issues being litigated here, and that Circuit's reasoning, while instructive, is not preclusive.

19

illustration indicating that premiums would be "paid up" after thirteen years, and Tran's apparently limited understanding of English—that genuine issues of fact would exist in this case even if it could be shown that Tran read the policy (or had it read to him).[11]

Accordingly, summary judgment was not called for on the ground that Tran could not demonstrate justifiable reliance. We stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury. *See, e.g.*, *Silverman*, 533 A.2d at 115; *see also Rempel*, 370 A.2d at 368; *Toy*, 863 A.2d at 12. This is particularly true

[11]Although we believe that the District Court erred in determining that the policy language was clear, reasonable jurors in any event could find that, despite Tran's failure to read the policy, his reasonable expectations (based on Lam's representations) that his policy premiums would "vanish" after a period of time prevailed even if the District Court had been correct that those expectations contradicted unambiguous policy language. *See, e.g.*, *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004) ("The Pennsylvania doctrine of reasonable expectations states that '[t]he reasonable expectations of the insured is the focal point of the insurance transaction . . . *regardless of the ambiguity, or lack thereof*, inherent in a given set of documents.'" (quoting *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978) (emphasis added)).

20

in the insurance context, where the Pennsylvania courts have consistently applied equitable estoppel principles and have warned that we should be "chary about allowing insurance companies to abuse their position vis-a-vis their customers." *Bensalem Township*, 38 F.3d at 1311.

Having determined that the District Court erred in concluding that Tran could not establish justifiable reliance as a matter of law, we turn to Tran's argument that the District Court also erred in determining that he was required to prove justifiable reliance at all as to his UTPCPL claims.

B.      *Justifiable Reliance and the UTPCPL*

Tran alleged that MetLife violated the following provisions of Pennsylvania's UTPCPL, all of which deal with various forms of "unfair methods of competition" and "unfair or deceptive acts or practices": (1) § 201-2(4)(v)—"[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have"; (2) § 201-2(4)(vii)—"[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"; (3) § 201-2(4)(ix)—"[a]dvertising goods or services with the intent not to sell them as advertised"; (4) § 201-2(4)(xiv)—"[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made"; and (5)

21

§ 201-2(4)(xv)—"[k]nowingly misrepresenting that services, replacements or repairs are needed if they are not needed." In his brief Tran contended that because these alleged violations of the UTPCPL are based on MetLife's unfair business practices and deceptive conduct, and not on allegations of fraud, the District Court should have required him to establish only ordinary reliance, rather than justifiable reliance, with respect to these claims. Tran retreated from this position at oral argument. This was wise as recent Pennsylvania decisions substantially weaken his argument.

The "underlying foundation" of the UTPCPL "is fraud prevention." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) (internal quotation omitted). The Pennsylvania Supreme Court has noted that "[n]othing in the legislative history [of the UTPCPL] suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *Id.* Recently, that Court also held that, "[t]o bring a private cause of action under the UTPCPL, a plaintiff must show that he *justifiably relied* on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) (emphasis added) (citing, *inter alia*, *Weinberg*, 777 A.2d at 446).

In addition, the Pennsylvania Superior Court, which had previously agreed with Tran's position that plaintiffs were not

22

required to prove the elements of common law fraud with regard to certain sections of the UTPCPL, *see DiLucido v. Terminix Int'l, Inc.*, 676 A.2d 1237, 1241 (Pa. Super. Ct. 1996), changed its position on this issue in its 2004 decision in *Toy*. In that case, the Court reasoned that *Weinberg* and *Yocca*, taken together, dictate that a distinction between fraud and non-fraud claims under the UTPCPL cannot be made and that its earlier holding in *DiLucido* was thus incorrect. *Toy*, 863 A.2d at 10–11. In particular, *Toy* stated:

> Upon our review of the [Pennsylvania] Supreme Court's decision in *Weinberg*, we must conclude that *every* plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct. As the decision in *Weinberg* emphasized that the UTPCPL was designed to prevent fraud and that the legislature did not intend to remove the common law elements of reliance and causation that attend a fraud action, plaintiffs must demonstrate the level of reliance that accompanies a common law fraud claim.

*Id.* at 11 (emphasis added).

We are not bound by *Toy*'s holding (as it is not a Pennsylvania Supreme Court decision), but we are persuaded by

23

its reasoning, which we are obliged to consider. *Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990). Because *Toy* thoroughly surveys the relevant Pennsylvania Supreme Court case law and because the *Yocca* holding regarding justifiable reliance in UTPCPL claims is so broad, we believe *Toy* accurately predicts how the Pennsylvania Supreme Court would rule on this issue. We therefore reject Tran's argument that he is freed from proving justifiable reliance in connection with his UTPCPL claims and affirm the District Court's contrary ruling on this issue.[12] For the reasons stated in Section III(A), *supra*, however, we also remand Tran's UTPCPL claims.

## IV. Conclusion

In sum, the District Court was correct that Tran must establish justifiable reliance to prevail on all of his remaining claims, including those brought under the UTPCPL. It erred, however, in concluding that Pennsylvania law imposed upon Tran a duty to read his insurance policy or to have it read to him. Its conclusion that the pertinent policy provisions were clear and

---

[12]As the Pennsylvania courts have spoken on this issue, we need not address Tran's argument that we should look to decisions of the Federal Trade Commission ("FTC") for guidance in interpreting the UTPCPL, nor need we address MetLife's contention that Tran waived his argument that we should consider FTC decisions by not raising it below.

24

unambiguous was similarly in error. This case, like most others raising the issue of justifiable reliance, presents disputed issues of material fact that are simply more appropriate for resolution by a jury than by a judge. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[13]

---

[13]Because we have determined that we must reverse the District Court for the reasons stated above, we need not reach Tran's other arguments in favor of reversal.