Christopher KEMEZIS; Stephanie Kemezis, individually and as husband and wife, Appellants

v.

James MATTHEWS, Jr., doing business as Keegan Mortgage Corp.; Keegan Mortgage Corporation; Litton Loan Services, doing business as Litton GP, LLC; Fremont Investment & Loan Company, a/k/a Fremont Investment & Loan.

No. 08–4844.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 17, 2010.

Filed Sept. 20, 2010.

Rebecca Steiger, Esq., Matthew B. Weisberg, Esq., Prochniak Weisberg, Morton, PA, for Plaintiffs–Appellants.

Barry M. Miller, Esq., Law Offices of Barry Miller, Norristown, PA, Sandhya M. Feltes, Esq., Kaplin, Stewart, Meloff, Reiter & Stein, Blue Bell, PA, Jonathan J. Bart, Esq., Daniel S. Bernheim, III, Esq., Wilentz, Goldman & Spitzer, Philadelphia, PA, for Defendants–Appellees.

Before: SLOVITER, BARRY and SMITH, Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

The District Court dismissed Christopher and Stephanie Kemezis' Second Amended Complaint (the "Complaint") with prejudice for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The Kemezises appeal only dismissal of their claim under the catchall provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. § 201–2(xxi) (defining "unfair or deceptive acts or practices" in part as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding").

## I.

### Background

The Kemezises took out a loan secured by a mortgage held by Fremont Investment & Loan Co. on a property they purchased with the proceeds of the loan (the "Property"). James Matthews, Jr. brokered the transaction on behalf of Keegan Mortgage Corp. After a few years, the Kemezises decided to sell the Property in order to purchase a new one.

In the Complaint, the Kemezises allege that the day before that sale was to be closed, they discovered for the first time that their mortgage documents contained a penalty for prepayment. They allege that this prepayment penalty must have been "buried" in the loan and mortgage documents or otherwise concealed from them. App. at 18a ¶ 28. According to the Complaint, the Kemezises then contacted Matthews, who allegedly "stated that he did not know about the prepayment penalty," App. at 18a ¶ 31, and that "the prepayment penalty must have been placed in the loan when he left the room during the closing," App. at 18a ¶ 32. In the end, however, the Kemezises paid the prepayment penalty "due to the fact they did not want to lose

their deposit [on the new property] or breach" their agreement of sale. App. at 18a ¶ 33.

The Kemezises further allege that they had been surreptitiously charged a yield spread premium ("YSP") in connection with their purchase of the Property. "A YSP is a payment by a lender to a broker that compensates the broker for originating a loan with an 'above-par' interest rate. The 'par rate' is the interest rate at which the lender will fund 100% of the loan with no premiums or discounts." *Nat'l Ass'n of Mortg. Brokers, Inc. v. Donovan*, 641 F.Supp.2d 8, 10 (D.D.C.2009). Based on these and other allegations, the Kemezises filed an eighteen-count complaint against Matthews, Keegan Mortgage Corp., and Fremont Investment & Loan Co. in federal district court based on a wide range of state and federal laws.

The District Court dismissed most of the federal claims without prejudice, and dismissed the remainder of the federal claims with prejudice. After holding that the Kemezises failed to adequately plead diversity jurisdiction, the District Court declined to exercise supplemental jurisdiction over the state law claims, and dismissed them all without prejudice. The Kemezises subsequently amended their complaint.

Thereafter, the District Court requested that the Kemezises supplement the record with copies of their loan documentation. After reviewing those documents, the District Court dismissed the entire Complaint, this time with prejudice. As relevant here, the District Court reasoned that the UTPCPL claim—the only claim that the Kemezises challenge on appeal—failed because the allegations were not pled with the particularity required for claims of fraud under Federal Rule of Civil Procedure 9(b).

## II.

### Discussion[1]

The Kemezises argue that the District Court erred in applying the Rule 9(b) pleading standards for fraud claims to their UTPCPL claim, and that the claim should have survived a motion to dismiss under any standard. There is some disagreement in the Pennsylvania courts, and in district courts in this circuit, about whether the Pennsylvania Legislature's 1996 addition of the language "deceptive conduct" to the catchall provision of the UTPCPL, 73 Pa. Cons.Stat. § 201–2(4)(xxi), was intended to relieve those plaintiffs who made claims under that provision of the burden of proving all the elements of a common law fraud claim. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 (3d Cir.2008); *see also id.* at 225 n. 15 (discussing cases).[2] We need not

---

1. The District Court had jurisdiction under both 28 U.S.C. §§ 1331 and 1332. This court has jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's dismissal under Rule 12(b)(6) is plenary. *Howard Hess Dental Labs. Inc. v. Dentsply Int'l., Inc.*, 602 F.3d 237, 246 (3d Cir.2010).

2. Appellees Matthews and Keegan Mortgage Corp. argue that this court's opinion in *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140–41 (3d Cir.2005), held conclusively that Rule 9(b) applies to UTPCPL catchall claims. *Tran* does not mention Rule 9(b), and so, presumably, that argument rests generally on statements such as that "a distinction between

fraud and non-fraud claims under the UTPCPL cannot be made...." *Id.* at 140. However, the *Tran* case itself did not involve the catchall provision. Moreover, the Pennsylvania Superior Court case upon which *Tran* most heavily relied, *Toy v. Metro. Life Ins. Co.*, 2004 PA Super 404, 863 A.2d 1 (2004), concerned claims under the pre–1996 version of the UTPCPL catchall clause. As such, on appeal in the *Toy* case the Pennsylvania Supreme Court expressly declined to address what impact, if any, the 1996 changes to the language UTPCPL catchall had on claims made under that provision. *See Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186,

resolve that question, or decide whether plaintiffs must in any event plead UTPCPL catchall claims with the particularity specified in Rule 9(b), because the Kemezises have failed to allege a plausible claim for relief even under the more lenient standards of Rule 8. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotation and citation omitted)).

■ As this court recognized in *Hunt,* the Pennsylvania Supreme Court held in *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004), that the private-plaintiff standing provision of the UTPCPL, 73 Pa. Cons.Stat. § 201–9.2, requires plaintiffs to prove justifiable reliance even in cases involving the post–1996 catchall provision. *See Hunt,* 538 F.3d at 223–24. Therefore, in order to adequately plead their claim the Kemezises must at least allege facts from which plausible inferences of deceptive conduct and justifiable reliance thereon can be drawn. *See id.* at 224–27. The Complaint does not contain sufficient allegations regarding either element.

The Kemezises do not challenge the authenticity of the loan documents they provided to the court. Those documents include a "Prepayment Rider" so named in large, bold letters, and a U.S. Department of Housing and Urban Development Set-

tlement Statement that lists a YSP payment, both of which were signed by the Kemezises.[3] It was therefore incumbent upon the Kemezises to provide some plausible explanation of what, if anything, the defendants had done or said, and upon which the Kemezises could have justifiably relied. The Complaint, however, contains little more than conclusory and generalized assertions that misrepresentations and conscious omissions were made.[4]

■ The Kemezises also argue that the District Court erred in not sua sponte providing them the opportunity to amend the Complaint again. Their position is that because the District Court's first dismissal turned on the merits of the federal claims and a lack of diversity jurisdiction, they were not placed on notice of potential defects in the Complaint regarding their state law claims. Therefore, they argue, the District Court was required to provide them opportunity to amend again.

The Kemezises did not move the District Court for permission to amend their Complaint during pendency of the motions to dismiss. Nor did they move to amend the Complaint via motion under either Federal Rule of Civil Procedure 59(e) or 60(b). "[I]n ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly" made such a motion. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 253 (3d Cir.2007);[5] *see id.* (recognizing that a plaintiff has time after dismissal with prej-

203 n. 20 (2007). Therefore, although the Appellees may be correct that the UTPCPL catchall requires proof of all the elements of fraud and/or that Rule 9(b) otherwise applies to UTPCPL catchall claims, we are unwilling to rely on *Tran* for that point of law. In any event, we note there is a tension between the Kemezises' argument that Rule 9(b) does not apply to their catchall claim, and their subsequent assertion that the Complaint "sounds in fraud in the inducement." Appellants' Br. at 18.

3. The Kemezises make no argument that the District Court erred in requesting or reviewing these documents.

4. Given this lack of specificity, it is also unclear how any deceptive statements might survive Pennsylvania's Parol Evidence Rule. *See Yocca,* 854 A.2d at 438–39.

5. This court employs an alternate rule in civil rights cases under which "district courts must offer amendment-irrespective of whether it is

udice to move to amend the complaint under 59(e), and that Rule 60(b) gives a plaintiff a year in which to move to amend for good cause). Under the circumstances here, "the Court did not err in dismissing the case with prejudice, as it had no duty here even to consider allowing a right to amend." *Id.*

Additionally, the Kemezises have failed to either offer to this court a draft amended complaint or to otherwise explain what facts they would allege to rehabilitate their UTPCPL claim. This also precludes the relief they request. *See Fletcher–Harlee,* 482 F.3d at 252 (recognizing that "we have held that a failure to submit a draft amended complaint is fatal to a request for

leave to amend"). Nor do we give credence to the Kemezises' claim that they were "caught unaware by the Court's entry of judgment, as [they] had notice of [the defendants'] motion[s] and every opportunity to amend [their] complaint beforehand." *Id.* at 253.

## III.

### Conclusion

For the reasons set forth above, we will affirm the judgment of the District Court. this court to hold otherwise.

requested-when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher–Harlee,* 482 F.3d at 251. The Kemezises, however, have offered no argument why cases under the UTPCPL should be considered anything but "ordinary civil litigation." *Id.* at 253. We recognize that the *Hunt* court remanded to the district court to decide whether the plaintiff in that case should be permitted to amend

under the "inequitable or futile" standard, *see Hunt,* 538 F.3d at 228 (quotation omitted), but the *Hunt* opinion did not mention *Fletcher–Harlee* and there is no reason to believe that the defendants in that case made arguments concerning the standards set therein. In contrast, the defendants here squarely argue that *Fletcher–Harlee* is dispositive, while the Kemezises have provided no reason for this court to hold otherwise.