

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2005

# Dilworth v. Metro Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 04-2480

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Dilworth v. Metro Life Ins Co" (2005). *2005 Decisions.* Paper 609.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/609

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2480

———

ADRIENNE DILWORTH

v.

METROPOLITAN LIFE INSURANCE COMPANY

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 01-00128)
District Judge: Honorable Honorable Donetta W. Ambrose

———

Argued June 2, 2005

Before: FUENTES, GREENBERG, and COWEN, <u>Circuit Judges</u>.

(Filed August 12, 2005)

———

Kenneth R. Behrend (Argued)
Behrend & Ernsberger
Union National Bank Building
306 Fourth Avenue, Suite 3001
Pittsburgh, PA 15222

<u>Attorney for Appellant</u>

B. John Pendleton, Jr. (Argued)
Jessica Pici
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

<u>Attorneys for Appellee</u>

OPINION OF THE COURT

_____

GREENBERG, <u>Circuit Judge</u>.


I.  INTRODUCTION

        This matter arises from a dispute regarding alleged
misrepresentations made to the plaintiff-appellant, Adrienne Dilworth,
when she purchased a life insurance policy from the Metropolitan Life
Insurance Company (hereinafter called "MetLife") to insure her nine-
year old daughter, Aisha Sharif.  In particular, Dilworth asserted
claims predicated on negligence, common law fraud and deceit,
violation of the Pennsylvania Unfair Trade Practices and Consumer
Protection Law, Pa. Stat. Ann. tit. 73, § 201-1 (West 1993)
(hereinafter called "UTPCPL"), breach of the implied covenant of
good faith and fair dealing, bad faith under 42 Pa. Cons. Stat. Ann. §
8371 (West 1998), and breach of fiduciary duty.[1]  The district court on
MetLife's motion under Federal Rule of Civil Procedure 12(b)(6)
dismissed Dilworth's claims for breach of the implied covenant of
good faith and fair dealing, bad faith, and breach of fiduciary duty.
Inasmuch as Dilworth has not appealed from the order of dismissal of
those claims, we are not concerned with them on this appeal.
Accordingly, at this point Dilworth's claims are for negligence and
fraud and deceit, thus sounding in tort, or are statutory under the
UTPCPL.

        Subsequently, MetLife moved for summary judgment and the
court granted that motion by an order entered April 6, 2004.  Dilworth
then moved for reconsideration of the order for summary judgment
but the court denied that motion by an order entered on May 10, 2004.
 The court's bases for granting MetLife summary judgment were that

_____

        [1]Dilworth brought the action in state court but MetLife removed
it to the district court on diversity of citizenship grounds.  Thus, the
district court had jurisdiction under 28 U.S.C. §§ 1332, 1441.  We have
jurisdiction under 28 U.S.C. § 1291.

the statute of limitations barred all of Dilworth's claims remaining after the Rule 12(b)(6) dismissal, except those under the UTPCPL, as her causes of action on the barred counts accrued when MetLife delivered the policy more than two years before she brought this case. In reaching this conclusion the court rejected Dilworth's argument that the discovery rule saved her claims. The court then held that the UTPCPL claim failed on the merits as she had not relied justifiably on MetLife's misrepresentations when she purchased the policy.[2] Dilworth appeals from these two orders. For the reasons we set forth below we will reverse the orders of April 6, 2004, and May 10, 2004, and will remand the case to the district court for trial.

The circumstances leading to this litigation may be traced to November 1, 1991, when Dilworth met with Haisela Dorsey, a MetLife agent, regarding the purchase of a life insurance policy insuring the life of her daughter.[3] Dorsey had a close relationship to Dilworth as she was Dilworth's sister's best friend. On that same day, Dilworth signed an application for life insurance insuring her daughter. Metlife subsequently issued the policy which provided for a face amount of $75,000 and required monthly premium payments of $39.75. MetLife delivered the policy on December 14, 1991, to Dilworth who did not read it in detail but instead merely "skimmed" it.[4] App. at 255, 257, 258.

Dilworth asserts that she believed that she was purchasing a life-insurance policy requiring a minimal number of out-of-pocket cash payments. She alleges that Dorsey, the MetLife sales agent, represented that the policy would require her to make premium payments for only nine years because after that period the remaining

---

[2]Dilworth predicated a portion of her negligence claims on MetLife's alleged negligent supervision of its agents. The court granted summary judgment on the negligent supervision claim both on statute of limitations grounds and on the merits. Dilworth does not challenge the summary judgment to the extent that the court granted it on the merits and thus we do not set forth the court's reasons for reaching its conclusions on that point.

[3]MetLife describes Dorsey in its brief as now being a "former" representative. Appellee's br. at 5.

[4]We refer to Dilworth and her daughter interchangeably as the "insured" in this opinion.

premium payments would be fully funded.  The policy was said to "self-fund" through the use of accrued dividends, accumulated cash value, and interest.   Policies with such provisions commonly are referred to as "vanishing premium" policies.  Thus, Dilworth contends that it was her understanding that "after nine, close to ten years, I wouldn't have to pay anything else into it."  App. at 250-51.

In our experience defendants and their agents usually contest the factual predicate underlying claims similar to those Dilworth asserts.  While MetLife may take that position at the trial, this case nevertheless is unusual in that Dorsey, the MetLife sales agent, acknowledged in her deposition that she had characterized the policy to Dilworth as self-funding.[5]  Thus, Dorsey stated in her deposition that:

> The way it was supposed to be,
> it was an Accelerated Payment Plan to
> be paid up in ten years.  She bought it to
> have college money for her daughter.
> And she bought it somewhere in '90, so
> by the year 2000 it was supposed to be
> paid up and then collect dividends.
>
> It wasn't anything like she was
> to get monthly dividend payments, no. It
> was to be a ten-year policy that would
> be paid up in ten years, and that there
> would be dividends – by the time [the
> daughter] was 95, [the daughter] was
> supposed to have millions of dollars,
> and she was supposed to be able to
> collect the money before death, because
> at 95, they can declare you legally dead,
> if she wanted to get the other part.

App. at 445.  In the circumstances, we regard it as clear for purposes of this appeal that Dorsey misled Dilworth.  We also regard it as established at this time that MetLife was hardly an innocent party in

---

[5]Tran v. Metropolitan Life Insurance Co., 408 F.3d 130 (3d Cir. 2005), a case we discuss below, presents a more common situation with respect to a defendant's answer to a plaintiff's claim that it made misrepresentations when it sold the plaintiff an insurance policy.

Dorsey's conduct for she testified that MetLife instructed her to inform her customers that the life insurance policies were guaranteed to self-fund, even though this was not an accurate representation of them:

> Q: And the dividends on the life insurance policies were not guaranteed either; right?
>
> A. They were not guaranteed. They told me that they were not guaranteed, but I was told to tell the clients that they were guaranteed.

App. at 446.[6]

Notwithstanding Dorsey's representations, the life insurance policy that MetLife delivered to Dilworth did not provide that after a minimal number of payments it automatically would self-fund. Therefore, rather than providing for the premiums vanishing, the policy required Dilworth to make monthly premiums, every month for its duration. This requirement did not involve a short-term undertaking as its premium schedule provided for monthly premiums of $39.75 for 86 years.

The appeal raises two questions that we discuss in detail: (1) whether the district court erred in holding that Dilworth needed to undertake a cursory examination of the policy to show due diligence and that such a review would have revealed her injury thus depriving her of the benefit of the discovery rule to overcome MetLife's statute of limitations defense; and (2) whether the district court erred in holding that Dilworth's UTPCPL claim failed as she could not demonstrate that she justifiably had relied on the representations made to her because the plain language of the policy expressly contradicted

---

[6]We are setting forth the facts on this appeal in the light most favorable to Dilworth as she appeals from an order granting summary judgment against her and an order denying reconsideration of that order. Thus, it should be understood that our opinion does not preclude MetLife from contending at the trial that the facts were different.

Dorsey's alleged oral misrepresentations.[7]

## II. STANDARD OF REVIEW

On an appeal from an order entering summary judgment, we undertake a de novo review and apply the same standard the district court applies on such motions. Petruzzi's IGA Supermarkets, Inc v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993). Accordingly, summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Union Pac. R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002). We view the record on appeal in the light most favorable to the party who lost on summary judgment in the district court. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962). The parties agree that Pennsylvania law, including its statute of limitations, applies in this case. See Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464 (1945); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938); Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160, 166 (3d Cir. 1976). Under Pennsylvania law, a party seeking to benefit from the discovery rule to delay the running of the statute of limitations has the burden of establishing that she was unable to know of her injury and could not ascertain that knowledge exercising reasonable diligence. Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997) (citing Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)); Drelles v. Mfgs. Life Ins. Co., No. 890 WDA 2004, 2005 WL 1545533, at *11, _ A.2d __ (Pa. Super. Ct. July 5, 2005). The standard of reasonable diligence is objective. Rendez v. Rosenberg, 520 A.2d 883, 886 (Pa. Super. Ct. 1987). If the discovery rule is applicable the statute of limitations does not begin to run against a plaintiff during the period in which she reasonably was unaware of her injury.

The Pennsylvania Supreme Court has not spoken directly to the issues raised on this appeal in a vanishing premium context. Thus,

---

[7]Dilworth argues that by applying principles of "full faith and credit under collateral estoppel or issue preclusion," appellant's br. at 2, we should reverse the order for summary judgment by reason of certain Pennsylvania state court decisions adverse to MetLife. We summarily reject this argument without discussion.

its decisions do not establish clear law to enable us to answer the following questions: (1) whether Dilworth can demonstrate that she acted with reasonable diligence and obtain the benefit of the discovery rule when the precise terms of her policy possibly were inconsistent with her reasonable expectations of what the policy contained; and (2) whether her reasonable expectations excuse her failure to perform a cursory examination of her insurance policy for purposes of delaying the running of the statute of limitations? Therefore, we must predict how that court would resolve these issues should it be called upon to do so. See Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990). In this undertaking we examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the "decisional law" of the Pennsylvania intermediate courts; (3) opinions of federal courts of appeals and district courts applying state law; and (4) decisions from other jurisdictions that have discussed the issues we face here. Gruber v. Owens-Illinois Inc., 899 F.2d 1366, 1369-70 (3d Cir. 1990). Of course, it is implicit in our formulation of the issues that, at least at this time, we regard Dilworth's expectations, predicated as they were on Dorsey's statements, as reasonable.

III. DISCUSSION

A. Whether the Statute of Limitations Bars Dilworth's Tort Claims

Dilworth contends that "the District Court erred in failing to apply Pennsylvania's Discovery Rule to toll the running of the statute of limitations to [her] claims until such time as [she] could have reasonably discovered the misrepresentations made by the defendant['s] agents in order to induce the sale." Appellant's br. at 2. The parties agree that (1) Pennsylvania's two-year statute of limitation, 42 Pa. Cons. Stat. Ann. § 5524(7) (West 2004), applies to all of Dilworth's claims except those she predicates on the UTPCPL; (2) her causes of action accrued when she received the written

insurance policy in December 1991;[8] and (3) she did not file suit until April 2000.  Therefore, unless the discovery rule delayed the triggering of the running of the statute of limitations, her claims, except those premised on the UTPCPL, are barred by its two-year filing requirement.[9]

Dilworth contends that the district court erred in holding that she needed to undertake a cursory examination of the policy to show her reasonable diligence so as to justify the application of the discovery rule.  She predicates this argument on her contention that her reasonable expectations as to the terms of the policy to be issued caused her not to question whether the policy that MetLife issued was actually the type of policy that the agent sold her.

In discussing this point, we first note that the parties and the district court seem to have conflated decisions of the Pennsylvania courts defining the discovery rule's requirement of "reasonable diligence" with cases articulating what constitutes "justifiable reliance" under the UTPCPL.  The district court recognized that "a plaintiff is entitled to exclude from the limitations period any 'time during which the injured party is reasonably unaware that an injury has been sustained.'"  District Court opinion at 5-6 (citing Dalrymple, 701 A.2d at 167) (emphasis in original).  The court then concluded that Dilworth "had sufficient information upon receipt of her policy that, had she made a 'cursory examination' of the policy, she would have discovered the injury." Id. (citing Silverman v. Bell Sav. & Loan Ass'n, 533 A.2d 110, 115 (Pa. Super. Ct. 1987)).

We think that the district court's approach may not have been

_____

[8]There may have been a ten-day delay after she received the policy by reason of a right to examine provision in the policy, see Drelles, 2005 WL 1545533, at *6, but in this case that delay would be immaterial.

[9]There is a six-year statute of limitations under the UTPCPL but the district court held that the running of the statute of limitations on Dilworth's claims under the UTPCPL claim was tolled for a portion of the period prior to her bringing this action by reason of a class action brought against MetLife under the UTPCPL.  The exclusion of this period was sufficient to make her action timely under the UTPCPL. Inasmuch as MetLife does not challenge that holding we do not discuss it further.

quite correct because <u>Silverman</u> did not involve a statute of limitations issue and therefore the court should not have relied on that case to define what constituted reasonable diligence for purposes of the discovery rule. Rather, the <u>Silverman</u> court used the "cursory examination" standard to determine, "whether a person's reliance upon a fraudulent misrepresentation [is] justifiable" in an action "alleging fraudulent misrepresentation." <u>Silverman</u>, 533 A.2d at 115.[10]

We find the Pennsylvania Superior Court's opinion in <u>Toy v. Metropolitan Life Insurance Co.</u>, 863 A.2d 1 (Pa. Super. Ct. 2004), to be useful in considering the contours of the discovery rule in this case. There the Superior Court recognized that there are different standards to determine whether a plaintiff has exercised reasonable diligence to ascertain the facts to justify a delay in the triggering of the statute of limitations and the standards necessary to prove that a plaintiff justifiably relied on a defendant's representations to sustain a claim under the UTPCPL. The <u>Toy</u> court affirmed the trial court's decision pursuant to the statute of limitations to bar the plaintiff's tort claims – because the language of the policy should have alerted her to her claims and because she unreasonably delayed seeking the information that would have alerted her to the fact that she had not received the contract promised – but reversed the grant of summary judgment against her on her UTPCPL claims, as the appellate court, unlike the trial court, held that she justifiably could have relied on the agent's representations, despite the fact that a reading of the policy would have revealed that her expectations were erroneous. <u>Toy</u>, 863 A.2d at 7-8, 12-13.

It is important to note, however, that the Pennsylvania Supreme Court never has held that the discovery rule mandates that an insured inspect her policy to obtain the benefit of the discovery rule. In fact, the examination requirement, and the derivative impact of such a requirement which allows the insurer to use the language of an insurance policy to defeat the reasonable expectations of the insured, is at odds with the Pennsylvania Supreme Court's justifiable reliance jurisprudence. <u>See</u> <u>Rempel</u>, 370 A.2d at 369; <u>see also</u> <u>In re: General</u>

---

[10]The district court, relying in part on <u>Silverman</u>, ultimately held that Dilworth could not demonstrate reasonable diligence, and thus could not satisfy one of the requirements for application of the discovery rule, because a reasonable person would have discovered with a "cursory examination" of the policy that the premiums did not, in fact, "vanish."

Am. Life Ins. Co. Sales Practices Litig. (Knouse v. General American Life Ins. Co.), 391 F.3d 907, 914 (8th Cir. 2004) (hereinafter cited as "Knouse") (predicting that the Supreme Court of Pennsylvania would import its reasonable expectations analysis into its discovery rule jurisprudence and hold that in some circumstances in vanishing premium cases an insured does not have a duty to read his policy and discover his injury or risk).

We, however, need not in this case predict whether the Pennsylvania Supreme Court would deem it necessary for an insured to perform a cursory examination of an insurance policy to demonstrate due diligence for purposes of the discovery rule. Assuming, without deciding, that in the exercise of reasonable diligence an insured must make such a cursory review, such an examination of the policy in this case would not have put Dilworth on notice of the misrepresentations.[11] Accordingly, even if armed with the information she could have gleaned from a cursory examination of the policy, Dilworth would not have been able to see that it did not provide "vanishing premiums."

Therefore, we hold that the district court erred by holding that the language of the policy dispositively demonstrated that a reasonable person would have been put on notice that she had not received a vanishing premium policy if she had performed a cursory examination of the policy. The court erroneously focused on the fact that the policy set forth the number of payments it required but did so without examining whether the policy articulated the source of those payments. Though the policy indicated that 86 years of payments would be necessary, even if Dilworth had been aware of this provision it would not have been inconsistent with the agent's representation that after the first nine or ten years of payments the remaining 77 or 76 years of payments would come from the accrued dividends, accumulated cash value, and interest.[12]

In this regard, the opinion of the Court of Appeals for the Eighth Circuit in Knouse, 391 F.3d at 907, a diversity of citizenship

---

[11]The district court treated Dilworth's skimming of the policy as having been something less than a cursory examination of it. On this appeal we do not question this conclusion.

[12]Of course, the payments would have stopped on the insured's death.

case applying Pennsylvania law, is helpful. There the insurance company led the plaintiffs to believe that they were purchasing vanishing premium policies even though the company actually issued traditional life insurance policies. As in the present case, the policies required a specific number of payments. The plaintiffs brought suit alleging, in part, fraud, deceit, and negligence. The insurance company asserted that Pennsylvania's two-year statute of limitations barred the plaintiffs' claims because they could, and should, have discovered their alleged injuries when they received the policies. The district court agreed with the insurance company and dismissed the claims on summary judgment. On appeal the court of appeals, however, reversed the orders of the district court, and remanded the case for trial. The court of appeals stated:

> [T]here is nothing on the cover pages of any of the policies at issue here that would inexorably lead to a conclusion that plaintiffs (non-commercial, unsophisticated insureds) should have known that the vanishing premium concept allegedly explained to them would not occur as represented. Each cover page states only that plaintiffs had a right to examine each policy and that flexible premiums were 'payable' until each insured reached a certain age . . . . These provisions could be read by a reasonable unsophisticated insured as being completely consistent with the agents' alleged representations that the premiums paid by plaintiffs for a limited time, in combination with policy interest and dividends paid, would be sufficient to cover future premiums.

Id. at 913. See also Symanski v. Boston Mut. Life Ins. Co., 778 N.E.2d 16, 23-24 (Mass. App. Ct. 2002) (holding that policy language which explicitly stated that premiums were to be paid once a year for an extended period of time did not contradict the representations of "vanishing premiums" made to induce the sale); Asad v. Hartford Life Ins. Co., 116 F. Supp. 2d 960, 965 (N.D. Ill. 2000) ("While Hartford correctly states that the policy reveals that premiums are to be paid for 46 years, '[t]he crux of the dispute

11

between the parties is not whether the premiums are payable [for 46 years], but from what source the premiums should be derived.'").

We recently endorsed this approach in <u>Tran v. Metropolitan Life Insurance Company</u>, 408 F.3d 130, 139 (3d Cir. 2005). We noted in <u>Tran</u> that:

> [E]ven if Tran had read his policy or had it read to him, an examination of the policy terms would not necessarily have revealed that [the agent's] alleged statements were false as to when premium payments would cease. The policy states that dividends may be used to pay premiums. Thus the policy term providing that premiums would be payable for fifty-nine years does not unambiguously mean that Tran would be required to pay those premiums out-of-pocket for that entire period of time.

We agree with the courts in the above cited cases and believe that even if Dilworth had made a cursory examination of her policy, the information that she could have gleaned from making such an examination would not, as a matter of law, have put her on notice of her injury because reasonable minds could disagree as to whether the information in the policy revealed that the premium payments did not "vanish." When the minimal information that a reasonable person can be expected to glean from a "cursory" review of an insurance policy is combined with the summary judgment standard, there clearly exists a genuine issue of material fact as to whether the exercise of reasonable diligence even if it included a cursory examination of the policy would have uncovered the underlying injury in this case.

Overall, we believe that the situation here is similar to that in <u>Drelles</u> where the court said that even if the plaintiffs "were required to scrutinize the policies, the policies themselves do not provide all the information needed to determine whether [the agent] misrepresented the vanishing premium insurance plans at the time of the sale." <u>Drelles</u>, 2005 WL 1545533, at *11. Therefore, inasmuch as the discovery rule applies in this case, the district court's grant of summary judgment was inappropriate with respect to the claims that it

12

held the statute of limitations barred.[13]

B. Whether the District Court Erred In Granting Summary Judgment Based Upon Its Holding that Dilworth Could Not Demonstrate Justifiable Reliance As a Matter of Law

Dilworth argues that the district court erred in granting summary judgment against her with respect to her UTPCPL claims on the merits even though they were not time-barred. In this regard, she urges that a reasonable jury could have concluded that she justifiably relied on the agent's representations about the nature of the policy. The district court held that Dilworth's reliance was unjustified because "the alleged oral misrepresentations [were] expressly contradicted by the plain language of the policy and, accordingly, plaintiff [could not] establish reasonable reliance on those representations." District Court opinion at 10-11.

We believe that the district court's disposition of Dilworth's UTPCPL claims was erroneous. The grant of summary judgment was contrary to the holding of the Pennsylvania Superior Court in Toy,[14] our holding in Tran,[15] and the teaching of decisions of the Pennsylvania Supreme Court. Overall, it is clear that Pennsylvania law does not allow an insurer to use the explicit language of its insurance policy to defeat the reasonable expectations of an insured, at least when the insured's expectations are based on the insurer's or its

---

[13]Once the discovery rule is factored into the statute of limitations analysis it is uncertain when the statute of limitations started to run in this case. The district court indicated that Dilworth contended that she did not discover her claims until 1998 or 1999 but in its analysis the time difference did not matter as either way the statute of limitations barred Dilworth's claims except those under the UTPCPL. Thus, we do not bar MetLife on the remand from contending that even applying the discovery rule Dorsey brought this action too late.

[14]The Pennsylvania Superior Court recently followed Toy in Drelles, indicating that the claim in Drelles was "identical to that presented in Toy." 2005 WL 1545533, at *13.

[15]In fairness to the district court, we note that we decided Tran long after the district court ruled here.

13

agent's representations, and that it is not unreasonable for insureds to rely on the representations of the insurer's agent rather than on the contents of the insurance policy to understand the scope or cost of her coverage. See, e.g., Rempel, 370 A.2d at 368; Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994). We recognize, of course, that an insured's evidence at trial may be inadequate to prove that her reasonable expectations differ from the provisions of the policy but in this case Dilworth is entitled to try to do so.[16]

In Tran we recently addressed a justifiable reliance issue similar to that raised here. There we reversed the district court's grant of summary judgment in favor of MetLife under the UTPCPL because there was a genuine issue of fact as to whether the insured justifiably relied on representations the MetLife agent made regarding the nature of the life insurance policy the insured had purchased. Tran, like the case before us, involved alleged misrepresentations leading to the insured erroneously believing he had purchased a vanishing premium policy. As here, MetLife argued that the plaintiff's reliance could not be justified because the explicit text of the policy contradicted his expectations. The district court in Tran granted summary judgment, holding that the insured could not have justifiably relied on the agent's misrepresentations because the explicit language of the policy contradicted the insured's expectations. We reversed the judgment of the district court, thoroughly documenting the Pennsylvania precedent leading to our conclusion that "an insured has no duty to read a policy unless it would be unreasonable not to do so." 408 F.3d at 137-38.

In this case the district court noted "that the alleged oral misrepresentations are expressly contradicted by the plain language of the policy and, accordingly, plaintiff cannot establish reasonable reliance on those representations." District Court Opinion at 10-11. Therefore, as was the case in Tran, summary judgment was inappropriate because the district court's determination that Dilworth

---

[16]Our opinion should not be overread. In a particular case it well may be that an insured on the basis of naked allegations should not survive a motion for summary judgment by asserting that the policy differs from what she expected. Each case must stand on its own facts. Thus, we do not intend our opinion to hold that Pennsylvania insurance law is in a chaotic state. Here, however, Dilworth's reasonable expectations were predicated on what MetLife's agent acknowledged she told Dilworth.

could not justifiably rely on the MetLife's agent's representations as a matter of law rested almost entirely on the court's erroneous conclusion that Dilworth had a duty to read the policy and that the language of the policy could defeat her reasonable expectations. As we noted in <u>Tran</u>, "[w]e stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury." 408 F.3d at 139. Dilworth should have had the opportunity to present her claims of justifiable reliance to a jury.

## IV. CONCLUSION

For the foregoing reasons, we will reverse the district court's orders of April 6, 2004, and May 10, 2004, and will remand this case to the district court for further proceedings consistent with this opinion.[17]

---

[17]Our reversal and remand dispositions do not apply to Dilworth's negligent supervision claim because the court granted MetLife summary judgment on this claim on the merits and she does not challenge that disposition on this appeal. <u>See</u> <u>supra</u> note 2.