

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-17-2005

# Johnson v. Metro Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4126

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Johnson v. Metro Life Ins Co" (2005). *2005 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4126

_____

MICHAEL V. JOHNSON,
Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY;
JOSEPH A. BRUNO

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-00663)
District Judge:  The Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
October 18, 2005

Before: SMITH, NYGAARD, and STAPLETON, Circuit Judges.

(Filed: November 17, 2005)

_____

_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellant Michael Johnson appeals the District Court's grant of Appellee Metropolitan Life Insurance's ("Met Life") motion for summary judgment on negligence and fraud claims arising from the purchase of a life insurance policy. We have jurisdiction pursuant to 28 U.S.C. § 1291, and will reverse.

This case involves, yet again, the commonly problematic "vanishing premium" insurance policy. In 1992, a Met Life agent approached Johnson, a resident of New Jersey at the time, in an effort to sell a life insurance policy. Johnson purchased the policy based on representations made by the Met Life agent that the policy's premium payments would be made from a cash surrender of one of Johnson's earlier policies and through a small monthly payment of twenty-two or twenty-three dollars. Essentially, Johnson was under the impression that the policy would be self-funding through investment dividends made by Met Life. At the time of the meeting, the Met Life agent also used an illustration that demonstrated the self-funding nature of the policy. Johnson testified that after this meeting, he was under the impression that premium payments would not increase based on the payout of his originally converted policy. In fact, the actual policy contained no such guarantee. In addition, an illustration used by the Met

2

Life agent contained a clause stating that the self-funding plan was only possible and not guaranteed. Johnson admits to never reading or reviewing his policy.

Unlike in similar cases based on Pennsylvania law, the District Court did not dismiss Johnson's claims as time-barred. Instead, the District Court held, as a matter of law, that Johnson could not have reasonably relied on the alleged misrepresentations by the Met Life agent when faced with the plain language of the policy. Because we believe that the plain language does not unambiguously contradict the alleged misrepresentations, we will here follow the rationale of our decision in *Dilworth v. Metropolitan Life Insurance Co.*, 418 F.3d 345 (3d Cir. 2005). Moreover, we do not believe that New Jersey law differs in any material way from Pennsylvania law on the question of the effect of a policyholder's duty to read an insurance policy on his reasonable expectations about the nature of the policy.

II.

In *Dilworth* we held that if a policyholder believes, based on representations made by an insurer's agent, they own a "vanishing premium" life insurance policy, the actual provisions of the policy do not unambiguously contradict that belief by merely stating a different length of premium payment or by stating that the representations are merely illustrative. *Dilworth,* 418 F.3d at 351.

Here, the policyholders' contentions and experiences are, again, almost identical to those of the policyholders in *Dilworth*. The District Court based its conclusion on the assumption that the actual policy clearly contradicts the representations of the agents ("the policy illustrations used during the sales presentation, as well as the policy itself, contain language entirely at odds with the alleged misrepresentations made by [Met Life]"). Like the policy in *Dilworth*, however, a cursory examination would have revealed nothing inconsistent with, or contrary to, the "vanishing premium" scheme set out by the Met Life agent. Simply because the policy indicates a longer time-period for premium payments, or that the claimed time-periods are not guarantees, does not render it inconsistent with the policyholder's belief that he would not have to pay premiums after a certain time period because they would be self-funding.

The District Court, therefore, erred by holding that the language of the actual policy deprives, as a matter of law, the policyholder from pursuing his claim in front of a jury. *Dilworth* established that the plain language of a vanishing premium policy does not absolutely contradict representations made by an agent or the impressions of the policyholder about the nature of the policy. It therefore cannot be said that, as a matter of law, Johnson's reliance on the oral representations by the Met Life agent was unreasonable. Because the District Court's grant of summary judgment here rested almost entirely on the erroneous belief that the plain language of the policy would have defeated the reasonable expectations of the policyholder, it was inappropriate.

4

Finally, the District Court held that "an insured has a duty under New Jersey law to read his insurance contract upon receipt."  Because our decision in *Dilworth* explains that the plain language of the vanishing premium policy is not plainly contradictory to the alleged oral representations, we need not specifically address the question of whether New Jersey law imposes a duty on an insured to read his insurance policy.  We note, however, our belief that New Jersey law is in accord with Pennsylvania law in protecting the reasonable expectations of the individual policyholder. We think that New Jersey, like Pennsylvania, would not unequivocally impose a duty on the policyholder to read the policy where the policyholder was entitled to and did rely upon oral representations of an agent.  *See Harr v. Allstate Insurance Co.*, 54 N.J. 287, 310, 255 A.2d 208, 221 (1969).  In addition, to the extent that New Jersey has only carved out protection for policyholders who rely on representations made about coverage, we are guided by our decision in *Tran v. Metropolitan Life Insurance Co.,* 408 F.3d 130 (3d Cir. 2005), where we found no material distinction between misrepresentations regarding coverage and misrepresentations regarding premium structure.  Thus, a policyholder who does not receive the premium payment structure he anticipated is in exactly the same position as a policyholder who does not receive the coverage they anticipated due to misrepresentation.  We reiterate, however, that it may be the case here that Johnson's reliance on Met Life's representations was unreasonable.  But this question, in light of the

operative nature of the policy language and the agent's actual representations is one most appropriately addressed by a jury.

## IV.

For the foregoing reasons, we will reverse the District Court's orders and will remand this case to the District Court for further proceedings consistent with this opinion.