

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2006

# Murphy v. Fed Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1814

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Murphy v. Fed Ins Co" (2006). *2006 Decisions.* Paper 180.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/180

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-1814, 06-1320, 06-1356

———

ROBERT J. MURPHY,
                    Appellant

v.

FEDERAL INSURANCE COMPANY

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 02-02541)
Honorable Petrese B. Tucker, District Judge

———

Submitted under Third Circuit LAR 34.1(a)
November 9, 2006

BEFORE:  SLOVITER, CHAGARES, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: November 20, 2006)

———

OPINION OF THE COURT

———

GREENBERG, <u>Circuit</u> <u>Judge</u>.

    These matters come on before this court on three separate appeals from a single

district court case that the clerk of this court consolidated by order entered January 31,

2006. In view of the unusual circumstances here we set forth the history of the case at considerable length. Appellant, Robert J. Murphy ("Murphy"), brought this action in the Philadelphia County Common Pleas Court against Federal Insurance Company ("Federal") for, as he explains, "damages to real premises [at 7 Coopertown Road, Haverford, Pennsylvania solely] owned by [him] from Hurricane Floyd on or about [September 17, 1999] pursuant to [an insurance] policy [issued by Federal] indemnifying [him] for physical losses to [the] premises from all risks including a hurricane." Appellant's br. in No. 05-1814, at 7. The dispute largely focuses on damages to the property that Murphy attributes to a tree falling on it during the hurricane.

Notwithstanding Murphy's sole ownership of the Haverford property, the Federal policy listed both Murphy and his wife, Kathleen Murphy, as the named insureds. Though acknowledging that its policy covered the premises at the time of the loss, Federal questions whether the tree fell and caused damage as Murphy asserts. Quite to the contrary, it contends that its inspection of the premises several months after the hurricane did not reveal evidence that one might have expected to see if a tree had fallen during the hurricane and caused damage.

Federal removed the action to the district court on diversity of citizenship grounds under 28 U.S.C. § 1441. Thereafter Murphy moved in the district court to remand the case to the state court, but the district court denied that motion. Murphy appealed to this court from the order denying the motion to remand, but we dismissed the appeal as,

plainly, it was interlocutory and we thus lacked jurisdiction over it.

The case then proceeded in the district court. Murphy in that court stated claims both at common law and under the Pennsylvania insurance bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371 (West 1998). In the district court there was considerable controversy over Federal's attempt to take the depositions of Kathleen Murphy and Murphy's sons. Federal, in view of its assertion that she and the sons live or at least lived in the Haverford premises, understandably contends that they may have information about the case. On the other hand, Murphy asserts that Kathleen "[a]t all time material hereto and on the date of the loss was not occupying and/or present on the premises." App. in No. 05-1814, at 64. Moreover, he contends that his wife "has no knowledge, information or interest whatsoever in this matter or any connection with this matter and [is] incompetent and protected by the marital privilege and [the] Court clearly lacks power, authority, or jurisdiction over this non-party who has never been personally served at any time including tender of fee and mileage." Appellant's br. in No. 05-1814, at 10. He also questions whether Federal should be able to take the other depositions it sought.

In fact, Federal has not been successful in its attempts to take the depositions of Kathleen Murphy or Murphy's sons, an inability it attributes to Murphy obstructing its attempts to do so. On the other hand, Murphy attributes Federal's inability to take the depositions to its procedural failures in arranging for them and contends that, in any event, the depositions should not have been taken. These deposition problems led the

3

parties to file cross-motions, with Federal seeking to obtain orders enabling it to take the depositions, and Murphy seeking to bar, or at least limit, them in part through the means of a protective order with respect to Kathleen. In response to the motions, on February 25, 2005, the district court signed an order, entered on February 28, 2005, granting Federal's motion to compel Kathleen Murphy's deposition and denying Murphy's motion for a protective order. In a separate order on the same day, the court ordered that the depositions of his sons were to be taken. On March 10, 2005, Murphy appealed from those orders.

After the appeal was docketed in this court, our clerk sent a letter to the attorneys[1] advising them that the court had listed the appeal for possible dismissal due to a jurisdictional defect, as it was interlocutory, and inviting their comments on this possibility. Both parties responded to the clerk following which she submitted the case to a motions panel of this court for consideration of our jurisdiction. On August 24, 2005, the motions panel entered an order providing that the "appeal shall proceed only as to the denial of the protective order related to Kathleen Murphy and this issue is referred to the merits panel. All other orders under appeal are dismissed from this appeal." In entering this order, the motions panel referred both the jurisdictional problem with respect to an appeal from the denial of a protective order and, if the court has jurisdiction, the merits of

---

[1]Murphy, who is an attorney at law, has been representing himself in this litigation.

the appeal on that issue to the merits panel.[2]

For almost one year after Murphy initially appealed, the case went forward on parallel tracks for during that period the proceedings in the district court continued. In the district court Murphy filed an unsuccessful motion for a stay or for reconsideration of the February 25, 2005 orders. But prior to the district court denying that motion, Federal moved for summary judgment because, in its view, Murphy had not complied with his obligations under the insurance policy inasmuch as he had obstructed its efforts to obtain the depositions. Federal conceived that Murphy's conduct relieved it of its obligations under the policy which provided for examinations under oath of the insured and their family members.[3] In the alternative, it moved for an order of dismissal under Fed. R. Civ. P. 37 as a sanction for what it believed was Murphy's failure to comply with discovery orders. Murphy countered with a cross-motion for partial summary judgment.

On January 18, 2006, the district court granted Federal's motion for summary judgment and denied Murphy's, entering judgment in Federal's favor on January 24, 2006. The court took this action as it believed that Murphy's conduct in not cooperating with Federal materially breached his obligations under the insurance policy and thereby

---

[2]This order conformed with Third Circuit IOP 10.3.5 which provides that if a motions panel "votes not to grant [a] motion [to dismiss for lack of jurisdiction] the motion is referred by order, without decision and without prejudice, to the merits panel."

[3]The policy provided that "[Federal has] the right to examine under oath as often as [it] may reasonably require you, family members and other members of your household and have them subscribe the same." App. in 05-1814, at 119.

prejudiced Federal so that Murphy could not recover under the policy. Murphy timely appealed from the January 18, 2006 order in No. 06-1320 and appealed from the January 24, 2006 order in No. 06-1356. As we have indicated, the clerk has consolidated these two appeals with each other and with the earlier appeal in No. 05-1814. We dispose of all three appeals in this opinion.[4]

The first issue which we address is whether we have jurisdiction over the appeal in No. 05-1814 to the extent that the motions panel has not dismissed it already. As we have indicated, the motions panel dismissed that appeal on August 24, 2005, except to the extent that Murphy took the appeal from the denial of a protective order. Murphy believes that we have jurisdiction over the appeal, particularly to the extent that the motions panel did not dismiss it, under the collateral order doctrine.[5]

---

[4]Preliminarily we are constrained to make the following observation about the briefing in this case. Murphy has filed four briefs addressing the merits of the three appeals, two opening briefs and two reply briefs, and Federal has filed two answering briefs as it is the appellee in both appeals. Throughout his briefs, Murphy has used the word "admittedly" to describe what he sees as his own appropriate conduct and Federal's missteps as well as what he asserts are its legal and factual concessions. This style has enhanced our difficulty in understanding these confusing matters for Federal frequently is not admitting what Murphy suggests it admits. For example in Murphy's opening brief in Nos. 06-1320/1356, at 3 he indicates that his family members "admittedly," among other things, are not "witnesses." Of course, Federal's contention is exactly to the contrary and, indeed, in a sense, the parties' dispute about the family's potential knowledge is what this appeal is about. Notwithstanding Murphy's continuous misuse use of the word "admittedly," we have endeavored to understand both parties' contentions and are confident that we have not attributed positions to them that they have not taken.

[5]Understandably Murphy's brief on the merits in No. 05-1814 focuses on the protective order aspects of the appeal because he filed that brief after the motions panel dismissed the rest of the appeal. We are confident, however, that Murphy must have believed that

We reject Murphy's contention. We repeatedly have recognized that as "a general rule, discovery orders are not final orders of the district court for purposes of obtaining appellate jurisdiction under 28 U.S.C. § 1291." Bacher v. Allstate Ins. Co., 211 F.3d 52, 53 (3d Cir. 2000) (internal quotations and citations omitted). Thus, the collateral order doctrine rarely can apply to appeals from discovery orders. But there is a narrow exception to the general rule "when a party appeals a discovery order involving information which the party claims to be privileged or to constitute a trade secret." Id. Murphy contended in the district court that "any and all information communicated by [him] to his wife involving the foregoing subject loss to the real premises clearly involve confidential communications between husband and wife which are clearly privileged in accordance with applicable law . . . ." App. in No. 05-1814, at 66. This contention well may be correct because 42 Pa. Cons. Stat. Ann. § 5923 (West 2000) provides that, in general, "in a civil matter neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other."

Nevertheless, section 5923 does not help Murphy because, as Federal recognized in the district court, "any marital privilege can be sufficiently protected through traditional objections made at the deposition." App. in No. 05-1814, at 104. Moreover, Federal acknowledges in its brief in No. 05-1814, at 3, that the order of February 25, 2005 with respect to Kathleen Murphy, "is simply a procedural ruling requiring [her] to submit

we had jurisdiction over all aspects of the deposition orders or he would not have appealed from them.

7

to [a] deposition and does not require the waiver of any marital privilege asserted by Murphy." Consequently, the appeal at No. 05-1814 does not challenge a district court order permitting Federal to obtain privileged information. Thus, the collateral order doctrine is inapplicable to any aspect of the appeal brought from the February 25, 2005 orders and will not support our exercise of jurisdiction.

Murphy also argues that the February 25, 2005 orders, with respect at least to Kathleen Murphy, purport "to specifically enforce an alleged and disputed contractual undertaking" and, to that extent, are a "classic form of appealable equitable injunctive relief." Appellant's br. in No. 05-1814 at 5. This argument suggests that we should exercise jurisdiction under 28 U.S.C. § 1292(a)(1). We reject that contention because the February 25, 2005 orders neither grant nor deny any of the relief sought in this action and thus are not appealable injunctions within the meaning of that section. See In re Pressman-Gutman Co., 459 F.3d 383, 392-93 (3d Cir. 2006). Overall, we are satisfied that we do not have jurisdiction in No. 05-1814 to the extent that the motions panel did not dismiss that appeal and that we never had jurisdiction over any aspect of that appeal. Therefore, insofar as that appeal remains pending we will dismiss it.

The circumstance that the orders of February 25, 2005, were not appealable when Murphy took the appeal from them is of critical importance and has ramifications beyond the requirement that we dismiss the appeal. In Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985), we pointed out that as a general rule "the timely filing of a notice of appeal is

8

an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal." Inasmuch as the district court granted summary judgment in part because Federal never obtained the depositions it sought to take, arguably the district court's jurisdiction to enter summary judgment would have been in doubt if Murphy properly had taken the appeal in No. 05-1814.

There is, however, an exception to the general rule that we set forth in Venen, namely "that the jurisdiction of the lower court to proceed in a cause is not lost by the taking of an appeal from an order or judgment which is not appealable." Id. at 121 (internal quotations and citations omitted). Accordingly, inasmuch as we do not have and never did have jurisdiction over the appeal in No. 05-1814, that appeal did not preclude the district court from proceeding with the case and granting summary judgment.

There is yet another jurisdictional twist in this case which, ironically, causes us to consider the very issues raised in No. 05-1814 with respect to the February 25, 2005 orders, even though the motions panel and this panel together will have dismissed that appeal in its entirety. We repeatedly have recognized that a notice of appeal from a final judgment is construed as including orders entered prior to the judgment if they are related to the specified order from which the appellant took the appeal, the intention to appeal from the prior order is apparent, and the opposing party has not been prejudiced by such a construction. See, e.g., Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). The orders

9

of February 25, 2005, are within that category as clearly they are related to the opinion granting summary judgment and, indeed, were the very foundation for it. Moreover, Murphy's intention to appeal from the February 25, 2005 orders hardly could be clearer as he said as much in his notice of appeal in No. 05-1814. Consequently, the appeals in No. 06-1320 and No. 06-1356 that Murphy properly took bring the February 25, 2005 orders up for review in all their aspects, even to the extent that the motions panel dismissed the appeal from them despite the fact that the notices of appeal in No. 06-1320 and No. 06-1356 did not mention the February 25, 2005 orders.

We do not regard this treatment as unfair to Federal for two reasons. First, Federal has been well aware that Murphy objects to all aspects of the orders for depositions. Second, in his brief in Nos. 06-1320 and 06-1356, Murphy referenced his discovery order contentions. Thus, we will consider on the merits all issues raised on these three appeals.

On the appeal from the summary judgment, we undoubtedly exercise plenary review. See Dilworth v. Metropolitan Life Ins. Co., 418 F.3d 345, 349 (3d Cir. 2005). In this review we use the same standard as the district court. Accordingly, pursuant to Federal Rule of Civil Procedure 56(c), we can affirm the summary judgment only if there is no dispute of material fact and Federal is entitled to a judgment as a matter of law. In our review we review the record in the light most favorable to Murphy. See Dilworth, 418 F.3d at 349.

The parties, however, disagree with respect to our standard of review of the

February 25, 2005 orders, at least with respect to the denial of a protective order. Murphy contends that our standard of review is plenary on that issue and Federal asserts that we review it on an abuse of discretion basis, citing Shingara v. Skiles, 420 F.3d 301, 305 (3d Cir. 2005). In some cases the standard of review may be critical, as a court of appeals might affirm an order exercising deferential review that it might reverse on a plenary review. But this case does not come within that category as we are satisfied that, regardless of our standard of review, we must affirm the orders of the district court in all respects.

We now reach the merits of the appeal, an undertaking we initiate by describing the district court opinion. The district court, after setting forth the background of the case and legal standards implicated, described Federal's motion for summary judgment. It indicated that Federal contended that Murphy could not bring an action under the policy unless he complied with its provisions which included an obligation to cooperate in the processing of a claim including requiring members of his family to submit to examinations under oath. It further contended that Murphy breached this obligation and thus could not recover. On the other hand, Murphy contended that the examination provision was not a condition precedent to his recovery.

The court held that the policy unambiguously provided that Federal could obtain the depositions of Murphy's family. It could take Kathleen Murphy's deposition because she was an insured and, as Murphy's spouse, was within the definition of "you" in a

11

policy provision providing that Federal could examine "you," and could take Murphy's sons' depositions because they were "family members" of Murphy's household. Under the policy, in these capacities Federal could examine all of them. Indeed, the court believed that the fact "that the Federal Policy requires deposition testimony of Murphy's family is compelled as a matter of logic and cannot be reasonably disputed." App. in Nos. 06-1320/1356, at 28. Therefore, inasmuch as Murphy did not cooperate in the taking of the depositions the court believed that "the only issue for the Court is whether Murphy's failure to cooperate caused Federal substantial prejudice." Id. at 30. The court did not have any problem with this question as it concluded that "[a]s a result of Murphy's disregard for his duty to cooperate, Federal's Motion for Summary Judgment is granted." Id. at 31. Of course, the court also denied Murphy's cross-motion for summary judgment as Murphy's failure to cooperate relieved Federal of any duty it owed him.[6]

After our extensive review we will affirm and, except as follows, we have nothing

---

[6]We note that Murphy seems to contend that Kathleen Murphy is not an insured on the Federal policy, at least with respect to the Haverford property, because she did not apply for it. We reject that contention. In fact, the policy named Kathleen Murphy as an insured and there is no indication in the record of which we are aware that, prior to Hurricane Floyd, she was removed or even sought to be removed as an insured from the policy or that her obligations under the policy were limited. Moreover, even though Kathleen Murphy was not an owner of the Haverford premises there may have been good reason to list her as an insured as the policy covered losses to contents of the premises, in particular mentioning jewelry and furs the coverage for which there was a substantial premium. Thus, it is possible that even though this action does not include a claim for loss of personal property she had such property in the insured premises. We also note that the policy covered property in Longport, New Jersey. It is possible that Kathleen Murphy was an owner of that property.

12

to add to the district court's opinion. Murphy's argument, though long and involved, principally is as follows: "Plaintiff admittedly and in good faith reasonably/substantially complied with all conditions." Appellant's br. in Nos. 06-1320/1356, at 11. His problem is that though he might "admit" that he complied with the policy conditions, surely Federal does not. Federal had a right to take the depositions it sought to take, particularly those of Kathleen Murphy as both she and Murphy were parties to the insurance policy, and thus the district court correctly entered the February 25, 2005 orders. Then, when Murphy continued to obstruct the deposition process, the court was justified in entering the order of January 18, 2006, granting Federal summary judgment and denying Murphy's motion for summary judgment.

Our study of this matter has led us to conclude that even though there obviously are disputes of fact in this case with respect to the actual claim for coverage and the timeliness of Murphy's notice of his loss to Federal, there is no escape from the conclusion that notwithstanding his denial that he has done so, Murphy has been obstructing the proceedings by not complying with the discovery orders and the insurance policy, thereby prejudicing Federal. Thus, whatever might be true as to other facts, we are satisfied that based on a set of irrefutable facts, Federal is entitled to a judgment as a matter of law.

In reaching our result we are mindful of Murphy's contention that his wife's testimony, even if she appeared for a deposition, would be privileged but we see no

13

reason why, even if this is so, she did not have to appear for the deposition because, as Federal correctly recognizes, an order requiring her deposition would not preclude her from asserting a marital testimonial privilege at the deposition. Moreover, by contract Federal had a right to take her deposition.[7]

Finally we point out that we are aware that Murphy claims that his wife and sons do not have any material knowledge regarding this case. Perhaps this is so, but surely Federal does not have to take his word on this point. After all, it would be expected that an insured's immediate family would have seen damage to their husband's and father's property caused by a falling tree during a hurricane for an event of this kind surely would be of interest to the immediate family of the insured. Certainly it must not have seemed to the district court and it does not strike us that the attempt to take the depositions was a proverbial fishing expedition. Moreover, if Kathleen and the sons did not have any knowledge useful in this case they could have said so at their depositions.

For the foregoing reasons the orders of February 25, 2005, January 18, 2006, and

---

[7]We are aware of 42 Pa. Cons. Stat. Ann § 5924 (West 2000) which provides that "[i]n a civil matter neither husband nor wife shall be competent or permitted to testify against each other." In this case in view of the circumstance that both Murphy and his wife are insureds under the policy, which compels their availability for depositions, we have no need to explore the ramifications of that statute which by contract cannot apply here. We only state on this point that we cannot believe that the Pennsylvania legislature ever conceived that in the highly regulated insurance industry the terms of policies that the state authorities permitted to be sold would not be enforced even if, as here, they required spouses to testify about his or her spouse's losses. In this regard we point out that in Pennsylvania it is not lawful for an insurance company to sell insurance policies "until the forms of the same have been submitted to and formally approved by the Insurance Commissioner." 40 Pa. Stat. Ann. § 477(b) (West 1999).

January 24, 2006, will be affirmed and the appeal in No. 05-1814 will be dismissed.