NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2792
_____

SHANE STADTMILLER
Appellant

v.

UPMC HEALTH PLAN, INC.

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cv-00884)
District Judge: Honorable Joy F. Conti

_____

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2012

Before: FUENTES, HARDIMAN, and ROTH, *Circuit Judges*

(Opinion Filed: August 6, 2012)

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Shane Stadtmiller sued his former employer, UPMC Health Plan, Inc. ("UPMC"),

under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12117, the

Rehabilitation Act ("RA"), 29 U.S.C. § 794,[1] and several other state common law causes of action. The District Court granted summary judgment in favor of UPMC on Stadtmiller's federal claims and declined to exercise supplemental jurisdiction over his state law claims. Stadtmiller now appeals from the District Court's judgment on his ADA and RA claims. For the reasons stated below, we will affirm.

## I.

Because we write primarily for the parties, we recite only those facts necessary to our decision.

While serving in Iraq for the United States Army, Stadtmiller sustained hand and brain injuries; consequently, he now suffers from Traumatic Brain Injury and Post Traumatic Stress Disorder. Specifically, he has trouble concentrating, is sensitive to light and noise, and suffers anxiety when startled.

After ending his tour and returning to the United States, Stadtmiller worked with a job placement service for veterans to find employment. Through this service, he secured an interview with Colleen Walsh at UPMC for a managerial position; Walsh, who ultimately became Stadtmiller's supervisor, decided to hire Stadtmiller in November 2007. She explained that she was confident in his ability to succeed in this position based on his resume and experience, noting his strong leadership and organizational skills. Stadtmiller's disabilities were not discussed during his interview.

---

[1] "In light of the similarities between…the ADA and RA and their implementing regulations, we construe and apply them in a consistent manner." *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 91 n.5 (3d Cir. 2011) (quoting *Pennsylvania Prot. and Advocacy, Inc. v. Pennsylvania Dep't of Pub. Welfare,* 402 F.3d 374, 379 n.3 (3d Cir. 2005)).

Stadtmiller began work at UPMC on November 19, 2007. However, his responsibilities were rather limited during the first two months of his employment, as he was mainly shadowing other managers to learn what his new position entailed. As he began completing more substantial assignments, his supervisor noted immediate problems. In particular, he had trouble completing tasks, required close monitoring, made frequent errors, and was inattentive.

As a result, on March 31, 2008, Walsh met with Stadtmiller and gave him a document titled, "Orientation Period Performance Warning," informing him that "[f]ailure to show immediate and sustained improvement [would] result in termination." (App. 370a-71a.) This document detailed his shortcomings and listed three immediate performance requirements: Stadtmiller was to maintain focus during meetings, complete accurate and timely assignments, and pay attention to detail. Stadtmiller signed the document.

Although the exact date is unclear, sometime around then, Stadtmiller notified UPMC of his disabilities and made the following requests for accommodation: (1) a flexible schedule to attend doctor appointments, (2) permission to use a voice recorder because of his hand injury, and (3) an isolated work environment. Stadtmiller's third request was rather ambiguous, however. In particular, he inquired about an office with a door, but expressed concerns about feeling socially isolated. Additionally, according to Stadtmiller a human resources representative informed him that the only available space belonged to a different department. (*See* App. 869a). Nevertheless, UPMC extended the

3

length of his cubicle wall.[2]  Stadtmiller concedes that UPMC permitted him to use a voice recorder, afforded scheduling flexibility, and provided a modified cubicle.  His supervisors testified that they were never told by Stadtmiller, or anyone else, that the provided accommodations were inadequate.  After these accommodations were provided, Walsh monitored Stadtmiller and concluded that his performance had not improved and did not meet the standard of the department.  Accordingly, she decided to terminate Stadtmiller, effective May 15, 2008.[3]

Stadtmiller filed a complaint against UPMC for discrimination under the ADA and RA, along with several other causes of action related to his termination.  The District Court granted summary judgment in favor of UPMC on all claims.  Stadtmiller now appeals the District Court's judgment with respect to his claims under the ADA and RA.[4]

**II.**

Our review of a grant of summary judgment is plenary, and we apply the same standard that the district court applied.  *Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (citing *Dilworth v. Metro. Ins. Co.,* 418 F.3d 345, 349 (3d Cir. 2005)).  Thus, we draw all reasonable inferences in favor of the non-moving party and affirm only when "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law."  *Id.* (quoting Fed. R. Civ. P. 56(c)).

---

[2] His former co-worker, who occupied a neighboring cubicle, also stated that Stadtmiller's cubicle was located in a low-traffic area, which was only passed by a few employees also located in the same passageway.

[3] Stadtmiller was not replaced after he was terminated; his responsibilities were absorbed by other employees within the department.

[4] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.

**III.**

To establish a *prima facie* case of discrimination under the ADA, an employee must show that he (1) is disabled, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) has suffered an adverse employment action as a result of his disability. *Hohider v. United Parcel Service, Inc.,* 574 F.3d 169, 186 (3d Cir. 2009) (citing *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004)).

Discrimination under the ADA includes failing to reasonably accommodate "the known physical or mental limitations of an otherwise qualified individual with a disability" unless the individual's employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Williams*, 380 F.3d at 761 (quoting 42 U.S.C. § 12112(b)(5)(A)). Reasonable accommodation "includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith, under what has been termed a duty to engage in the interactive process." *Id*. (internal citation and quotation marks omitted). To show that an employer breached its duty to engage in the interactive process, the employee must demonstrate that:

> (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id*. at 772 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999)).

5

We agree with the District Court's conclusions that UPMC did not breach its duty to engage in the interactive process and that Stadtmiller failed to establish that the accommodations he requested, even if reasonable and feasible, would have rendered him qualified to perform his job duties. After Stadtmiller eventually disclosed his disabilities to UPMC, representatives of UPMC met with Stadtmiller to discuss his disabilities and requests for accommodation. The record indicates that Stadtmiller requested, and was provided with, three accommodations: (1) scheduling flexibility, (2) a voice recorder, and (3) modifications to his workspace.

On this record, we can confidently conclude as a matter of law that UPMC made a good faith effort to engage in the interactive process in accommodating Stadtmiller's disabilities. *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 333 (3d Cir. 2003) ("All the interactive process requires is that employers make a good-faith effort to seek accommodations.") (quoting *Taylor*, 184 F.3d at 317). In particular, upon learning of Stadtmiller's disabilities, UPMC met with him to discuss what accommodations he might need, quickly responded to his requests, ensured that his requests had been fulfilled, and detailed what he needed to do to improve his performance to meet the standard of his department. Therefore, we agree that Stadtmiller failed to raise a material question of fact regarding UPMC's good faith participation in the accommodation process and that it is entitled to judgment as a matter of law.

Moreover, Stadtmiller asserts that had UPMC afforded him an office, a higher cubicle partition, controllable lighting, or a more isolated work space, he would have met expectations. The District Court concluded that Stadtmiller raised no genuine dispute as

6

to his competence even with these accommodations he sought.  We agree for substantially the reasons stated by the District Court.  In support of his contention that an office and controllable lighting would have eliminated his performance deficiencies, Stadtmiller offers nothing but his résumé and his own conclusory assertions that accommodations like the ones requested helped him succeed in his post-injury military positions.  Accordingly, he did not demonstrate a necessary element of his prima facie Title I claim and thus the District Court did not err when it granted UPMC's motion for summary judgment.

## IV.

We have considered all other arguments made by the parties on appeal and conclude that they are without merit.  Having reviewed all evidence in the light most favorable to Stadtmiller, we will affirm the District Court's grant of summary judgment in favor of UPMC.